GULFPORT WINN-DIXIE, INC., et al. *v.* TAYLOR

No. 42529          February 4, 1963          149 So. 2d 485

*P. D. Greaves,* Gulfport, for appellant.

*Boyce Holleman,* Gulfport; *Donald W. Cumbest,* Pascagoula, for appellees.

RODGERS, J.

This is a damage suit for personal injuries brought by Mrs. Ada Taylor in the Circuit Court of Jackson County, Mississippi, for injuries received as the result of a fall in the store of appellant, Gulfport Winn-Dixie, Inc. The trial resulted in a jury verdict in the sum of $25,000. On motion of defendant, the judgment was reduced $5,000, and upon acceptance of the remittitur, the judgment was made final in the sum of $20,000 in favor of appellee, Mrs. Ada Taylor, against appellants, Gulfport Winn-Dixie, Inc. and Jerry Walker.

The record reveals that on January 12, 1962, the plaintiff, appellee here, went with her daughter-in-law to purchase groceries at a supermarket belonging to appellant at Pascagoula, Mississippi. They entered the store, took a cart, which the daughter-in-law, Elsie Tay-

lor, pushed. They began shopping at the front of the store and worked their way to the back. The meat counter runs across the rear of the store on the south side. When customers make a selection of chicken or other meat, it is necessary for them to turn their back on the store and the aisle running east and west along the meat counter. Across the aisle, north of the meat counter, is the counter on which bread is displayed. The aisle between the meat and the bread counter is approximately twelve feet wide. Testimony shows that Mrs. Ada Taylor went to the meat counter with her daughter-in-law and as the daughter-in-law moved down the counter a short distance, she heard a noise, and when she turned around she saw that her mother-in-law had fallen over a dolly or cart (sometimes called a stock buggy), which was located in the aisle between the meat and bread counters. Photographs of this stock buggy are in the record, and it appears to be a long, low platform which rises about eight inches above the floor and has four wheels. The cart is three feet, three inches long, and sixteen inches wide. At one end of the cart, there are handles which rise approximately thirty-eight inches from the floor, so placed for the purpose of pushing the cart. Testimony shows that Jerry Walker, Asst. Mgr. of defendant's store, and another employee, had previously put the car in the aisle for the purpose of moving bread to the counter to replenish the stock. A short time before finishing the process of unloading the cart, Jerry Walker went to the front of the store and called the employee who had assisted him in unloading the cart, thus leaving the stock buggy unattended in the aisle. Shortly thereafter, Mrs. Taylor fell or tripped over the buggy.

Appellee, Mrs. Ada Taylor, was approximately sixty-eight years of age at the time of the accident. It was necessary to perform surgery on her broken leg in order to insert a metal plate. She remained in the hos-

pital for approximately three months, during which time it was necessary to keep her leg in a cast. After leaving the hospital, she was required to wear braces and use a crutch, but finally there was a solid union of the bone, and although she will probably not be able to assume a complete squatting position, she will be able to use her leg without crutches.

Testimony shows that appellee was suffering with cerebral arteriosclerosis (hardening of the blood vessels) at the time of injury, and ordinarily she would have been out of the hospital earlier, but it was deemed advisable, due to her mental condition, to keep her there longer than usual. After leaving the hospital, she went to the old Jackson County Hospital, which is now a nursing home, and, after a period of convalesence, she is now able to walk. The doctor testified that the X-ray pictures show that the bone of her leg is in good position and alignment and that there is a new bone formation around the fracture, although the fracture line was, at the time, still visible in the pictures. The doctor was of the opinion that very good results had been obtained from the surgery, although he believed that it would be necessary for her to use a cane in the future. He stated that ''For a woman sixty-eight I think that she could probably do seventy-five to eighty percent of the required duties that a woman that age would have to do. As regards to running and jumping again, no, certainly not, but the walking and that I believe she will be all right, about seventy-five to eighty percent.''

At the conclusion of the testimony, defendant made a motion for a directed verdict which was overruled by the court.

Appellant complains of three alleged errors on appeal to this Court: First, the court erred in refusing to grant appellant a peremptory instruction requested at the conclusion of the trial. Second, the court granted an erroneous instruction. Third, the verdict of the jury

is so excessive as to evince bias, passion and prejudice on the part of the jury.

In discussing the foregoing alleged errors, the first question is to determine whether or not appellee, Mrs. Ada Taylor, presented sufficient proof on which to base the verdict. Appellants argue that negligence is not established by the evidence, and points out that there were no eyewitnesses to the accident, and argue that appellee was first seen with her legs across the buggy and that this is nothing more than an inference. Moreover, it is said that the stock buggy was easily visible and that the leaving of it in the aisle did not constitute negligence. Appellants point out the general rule with reference to the duty owed by the property owner to an invitee, as shown in 38 Am. Jur., Negligence, Sec. 96, p. 754, to-wit: "Generally speaking, the fact that a person who enters upon the premises of another does so at the invitation of the owner or occupant gives him a more favored position in respect of the care to be accorded him by the owner or the occupant than that to which one who enters by the mere sufferance of the owner or occupant is entitled. The rule is that an owner or occupant of lands or buildings, who directly or impliedly invites others to enter for some purpose of interest or advantage to him, owes to such persons a duty to use ordinary care to have his premises in a reasonably safe condition for use in a manner consistent with the purpose of invitation, or at least not to lead them into a dangerous trap or expose them to an unreasonable risk * * *". The same textwriter points out under Sec. 97, p. 757, the following: "There is no liability for injuries from dangers that are obvious, reasonably apparent, or as well known to the person injured as they are to the owner or occupant."

It will be observed that this textwriter also points out the following in Sec. 99, p. 759: "Very plainly the owner or occupant owes a duty in favor of persons who

come upon the premises for the purpose of transacting business with him or by his permission. This duty is illustrated most effectively by reference to the obligation of a storekeeper to customers. As hereinafter appears, a person who owns or maintains a store, shop, other public place of business is bound to use ordinary care to avoid accidents or injury to those properly entering upon his premises on business.'' The argument of appellants is to the effect that there is no liability for injuries, or dangers, which are obvious, and reasonably apparent, and cites the case of Frederich's Market, Inc. v. Knox, 66 So. 2d 251 (Fla. 1953), in support of this theory. In that case, a customer was alleged to have tripped over a box eight inches high and twelve inches long, which protruded into an aisle ten or twelve inches, and was placed so as to attract customers to the display. It was so obvious that anyone possessed of normal senses, and using them, could have reasonably seen the box. The Court held that the storekeeper was not responsible because the object was so obvious to a customer as to eliminate any negligence on his part.

We are of the opinion, however, that the facts in the foregoing Knox case, supra, are not similar to the facts here. In the instant case, the low, stock buggy, eight inches high, was left in a place where customers were invited to walk, and was left at a place where customers were expected to turn their backs to the aisle where the buggy had been placed in order to make purchases from the meat counter. In short, it was placed in an aisle where customers were expected to have their backs turned to the buggy.

The storekeeper should have reasonably anticipated that a customer walking along the meat counter would have stepped back from time to time in order to better observe the meat displayed on the counter, and that in

all likelihood he would trip over an object, placed behind him in the aisle, where a customer is invited to walk.

In the case of Bloomer v. Snellenburg, 69 A. 1124 (Pa. 1908), the customer stumbled over an obstruction in the passageway, and on appeal the Court said: "It is certainly true that where the owner or occupier of premises, in the prosecution of its own purposes, invites another to come upon the premises, he cannot with impunity expose the visitor to an unreasonable risk of any sort, as, for example, to an open hole in a passageway, or to a rope or other obstacle stretched across the aisle, liable to trip the foot. * * * The passageway ought to be kept reasonably clear for the use of those who at the time are expected to be, to some extent, using their eyes in the inspection of goods and merchandise spread before them for that purpose. It may be that the plaintiff, while looking at the goods around her rather than at the floor at her feet in search of obstacles, was not using the caution which reasonably prudent persons would be expected to use under the circumstances, but that was a question of fact for the jury * * *".

There are many cases on the rule that aisles in stores must be kept free from defects which render their use dangerous to customers. See 38 Am. Jur., Negligence, Sec. 136, p. 796, Anno: 33 A. L. R. 218, 43 A. L. R. 866, 46 A. L. R. 1112, 58 A. L. R. 142, 100 A. L. R. 739. In 38 Am. Jur., Negligence, Sec. 102, p. 763, the textwriter points out "The facts of the particular case are, of course, controlling upon the question of negligence in respect of a dangerous condition upon the premises, and ordinarily the question whether an owner or occupant has been negligent in this respect toward a person whom he has invited upon the premises is to be decided by the jury * * *".

(**Hn 1**) We are therefore of the opinion that the facts in this case presented a question for the jury and that

the trial judge was not in error in submitting the issue to the jury, as to whether or not defendant used ordinary care for the protection of its customers in leaving a low, stock buggy in an aisle at a place where the customers were required to turn their backs to the aisle in order to make selections at a meat counter.

In the case of White v. Herpolsheimer Co., 327 Mich. 462, 42 N. W. 2d 240, 26 A. L. R. 2d 667, where the plaintiff tripped over a child's swing, protruding into an aisle, the Supreme Court reversed the judgment of the trial court, sustaining a motion for judgment, notwithstanding the verdict. The Court said: ''If under the testimony presented the minds of reasonable men might honestly have reached different conclusions with reference to the matter, the question was properly for determination by the jury as an issue of fact.''

In the case of Phillips v. Montgomery-Ward & Company, 125 F. 2d 248 (CA 5th 1942 Miss.), the appellate court held that whether or not a box which protruded almost halfway into an aisle was an object which the storekeeper could have reasonably foreseen as dangerous was a question for the jury.

(Hn 2) In the case of Wallace v. J. C. Penney Co., Inc., 236 Miss. 367, 109 So. 2d 876, this Court reviewed authorities and pointed out that a storekeeper owes a duty to customers to exercise ordinary care to have his building in a reasonably safe condition, but he is not the insurer of safety of his customers.

It is therefore apparent to us that, under the facts of this case, the question as to whether appellant used ordinary care in leaving the stock buggy in the aisle is a question for the jury.

(Hn 3) Appellant complains that it was not shown that appellee tripped over the stock buggy, and that the mere fact that she was seen with her legs across the buggy is no more than an inference or conclusion that she tripped over or on it. This Court has heretofore

pointed out, however, that the proximate cause of an injury may be shown by circumstantial evidence. See Brown Oil Tools, Inc., et al. v. Robert W. Schmidt, et ux (No. 42,506, decision rendered January 14, 1963 — not yet reported); Palmer v. Clarksdale Hospital, et al., 206 Miss. 680, 40 So. 2d 582. In 38 Am. Jur., Negligence, Sec. 334, p. 1033, it is stated: "In accord with the rule governing proof of negligence generally, proximate cause need not be established by the testimony of eyewitnesses, nor by direct or positive evidence, but may be proved by circumstantial evidence; it may be determined by the circumstances of the case." See also Sec. 356, p. 1063, to the same effect.

(Hn 4) Appellants complain that the last sentence in one of the instructions granted to the plaintiff is error because it ends as follows: "You may find for the plaintiff in such sum as in your judgment will fully compensate her for the injury, if any, which she received as the proximate result of the negligence of the defendant." Appellants claim "This instruction peremptorily instructs the jury that the appellant here was guilty of negligence in its last sentence." It will be observed, however, that this instruction begins with, "The court instructs the jury for the plaintiff that if you find for the plaintiff, Mrs. Ada Taylor, in this case, then * * *". This instruction, as well as other instructions, is based on the proposition that if the jury finds for the plaintiff, then it may find for the plaintiff in such sum, etc. We do not agree with the construction placed upon this instruction by appellants. The instruction may be cumbersome but is not so erroneous as to require reversal. We are of the opinion that all of the instructions in this case, read together, fairly present to the jury the issues involved.

(Hn 5) It is next contended by appellants that the verdict is so excessive as to evince passion and prejudice on the part of the jury. The doctor's bills and other

necessary expenses were over $2,500. Appellee, Mrs. Ada Taylor, had, for some time, been suffering with cerebral arteriosclerosis, referred to as "hardening of the arteries", and her lengthy stay in the hospital was brought about by her mental condition. Clinically, she has a solid union of the bone and she will be able to walk without crutches, carrying her full weight, and although she may not assume a squatting position, her post-operative progress has been satisfactory, and she will be able to do seventy-five to eighty percent of the duties required of a woman of her age.

We have carefully considered testimony in this case, and we are of the opinion that the verdict of the jury for the sum of $25,000 is one of the rare cases where the verdict is so excessive as to evince passion and prejudice. The trial judge felt that the verdict was excessive and reduced it to $20,000. We are of the opinion, however, that the verdict should be reduced to $15,000, and unless a remittitur is entered in this Court within fifteen days from this date, the judgment of the lower court will be reversed and remanded for a new trial on the question of damages only.

Affirmed with remittitur.

*McGehee, C. J., and Kyle, Ethridge and Jones, JJ.,* concur.