Marie NEVILLS, Appellant,

v.

H.E. BUTT GROCERY COMPANY, d/b/a H.E.B. Pantry Foods, Appellee.

No. 09–00–435–CV.

Court of Appeals of Texas, Beaumont.

Submitted Feb. 23, 2001.

Decided March 15, 2001.

Rehearing Overruled April 5, 2001.

John Werner, Reaud, Morgan & Quinn, Inc. Beaumont, for appellant.

M.C. Carrington, Jonathan C. Allen, Mehaffy & Weber, Beaumont, for appellee.

Before WALKER, C.J., BURGESS and HILL,[1] JJ.

## OPINION

JOHN HILL, Justice (Assigned).

Marie Nevills appeals from a directed verdict resulting in a judgment that she take nothing in her suit against H.E. Butt Grocery Company d/b/a/ H.E.B. Pantry Foods for injuries that she sustained when she tripped over a stock cart that was being used to display black-eyed peas on New Year's Day. Nevills contends in a single issue that the trial court erred by granting H.E. B.'s motion for directed verdict.

We reverse the judgment and remand for trial because the trial court erred by granting H.E. B's motion for directed verdict since there was more than a scintilla of evidence that the display of black-eyed peas on a stock cart closely adjacent to a shelf of groceries posed an unreasonable risk of harm.

■ When reviewing a trial court's ruling with respect to an instructed or directed verdict, we must consider all of the evidence in the light most favorable to the party against whom the verdict was instructed, discarding all the contrary evidence and inferences. *See Porterfield v. Brinegar,* 719 S.W.2d 558, 559 (Tex.1986). The trial court may properly withdraw a case from the jury and instruct a verdict only if there is no evidence to support a material issue. *Id.*

■ To recover damages in a slip and fall case, a plaintiff must prove:

(1) Actual or constructive knowledge of some condition on the premises by the owner/operator;

(2) That the condition posed an unreasonable risk of harm;

(3) That the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and

(4) That the owner/operator's failure to use such care proximately caused the plaintiff's injuries.

*Wal–Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 936 (Tex.1998)

■ Nevills testified that on January 1, 1998, she entered an H.E.B. grocery store with a friend. She said that after entering the store the two stayed together for a while, then split up. She related that she went to the shelves where the store had a big display of black-eyed peas. According to Nevills, as she turned to her right to leave after picking two cans of black-eyed peas off the shelf, she tripped and fell over a stock cart. H.E.B. placed the cart, which contained a waist-high display of black-eyed peas, near shelves containing black-eyed peas so that there would be an adequate supply readily available to meet the New Year's Day demand.

Keith Rogers, the store director of the H.E.B. store where Nevills fell, testified that if it were feasible he would not have stock carts on the shopping floor while customers are there. He indicated that in terms of customer safety the best shopping area is a clean, clear area without any obstacles. He stated that a possibility existed that a stock cart on the floor can cause a tripping injury. Rogers acknowledged that a few years previously a customer had tripped on a stock cart, one that was not used as a display but was being used for stocking. He later stated that on the other occasion the customer tripped while attempting to step over the stock cart.

Rogers testified that when such a cart is used for stocking he prefers for the cart to be up next to the case for safety reasons and that a stocker be present with the cart to assist customers. He indicated that if

---

**1.** The Honorable John Hill, sitting by assignment pursuant to Tex.Gov't Code Ann. § 74.003(b) (Vernon 1998).

the cart were to be further out that he preferred it to be at least three to six feet from the shelves. He suggested that a person looking at a shopping area would generally stand from eighteen inches to two feet from that area. While stating that a cart containing trash would be considered a hazard and aesthetically displeasing, Rogers stated that a cart with product display at least three feet from a shelf would not be considered by H.E.B. as a safety hazard. Rogers acknowledged that he understood that in a situation "like this" he understood that the customer's attention would be focused on what he or she is buying. He recognized that H.E.B. wants to draw customers' attention to the goods on the shelves, putting little "special" stickers on the shelves so that customers will be looking at something potentially to buy. Rogers indicated that carts like the one in question are from five to six feet long; have six wheels; and have orange handles on both ends that are five to six feet in height. Pictures of such a cart show that the floor of the cart is only a few inches from the floor.

At the close of evidence presented by Nevills, H.E.B. moved for a directed verdict on the basis that since the cart in question was large and clearly visible, and since Nevills could have seen it had she been looking, it could not be characterized as an unreasonable risk of harm. The trial court granted the motion, stating that an obvious, clearly visible object could not, as a matter of law, constitute an unreasonable risk of harm.

We hold that the trial court erred in granting the directed verdict because the evidence presented constitutes more than a scintilla of evidence that the stock cart as placed in the H.E.B. store on the occasion in question created an unreasonable risk of harm. *See Gulfport Winn-Dixie, Inc. v. Taylor*, 246 Miss. 332, 149 So.2d 485, 488 (1963); *Gourges v. Schwegmann Bros. Giant Super Mkt., Inc. .*, 339 So.2d 929, 930 (La.Ct.App. 4th Cir.1976); *Phillips v.*

*Montgomery Ward & Co.*, 125 F.2d 248, 249 (5th Cir.1942).

In arguing that the evidence is insufficient to show that the stock cart display posed an unreasonable risk of harm, H.E.B. relies upon the cases of *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992); *Joske v. Irvine*, 91 Tex. 574, 44 S.W. 1059 (1898); *Seideneck v. Cal Bayreuther Assoc.*, 451 S.W.2d 752, 755 (Tex. 1970); and *H.E. Butt Grocery Co. v. Resendez*, 988 S.W.2d 218 (Tex.1999). It relies upon *Keetch* only to show that a condition that poses an unreasonable risk of harm is a necessary element of a premises liability action. It apparently relies on *Joske* to show the level of proof one must produce to defeat a motion for instructed or directed verdict, because the case is not a slip and fall case. Neither case is inconsistent with our opinion because we rely upon the same principles that are expressed therein.

In *Seideneck*, a customer got her heel caught in a rug, thirty-six inches in diameter, that was underneath a display table. *Seideneck*, 451 S.W.2d at 753. The court noted that the rug was a wool, pile-type rug with a loose-weave, mesh-type fringe of tassels. *Id.* The court indicated that the loops on the fringe were approximately one inch in diameter. The court, noting that there was no evidence that anyone had previously tripped on the rug; that the rug was defective or unusual; or that its particular construction or placement would have served as a suggestion or warning to the defendant that it presented the prohibited degree of danger, even if the defendant had attempted a formal survey for dangerous conditions, held that the evidence was so weak as to do no more than create a mere surmise or suspicion and therefore had the legal effect of no evidence. *Id.* at 754–55. We find the case to be distinguishable from the case at bar. In *Seideneck* there was no evidence of an object, over which one could easily trip, that was placed in the aisle of a store in a location just behind where a customer

would stand while picking up merchandise off a shelf, a shelf to which the store had endeavored to attract the customer's attention. In the case at bar Nevills testified that she tripped over the cart as she turned away after picking up two cans of black-eyed peas from the shelf at the side of the aisle. A reasonable jury could determine from the evidence that the stock cart was placed just behind where a customer would stand while picking a can off the shelf and that such a placement constituted an unreasonable risk of harm to a consumer whose attention has been directed to the shelf where goods are ordinarily displayed and who is not expecting an obstacle in an aisle that would ordinarily have been clear. Further, the evidence shows that the store recognized the danger in a stock cart being placed too close to the shelf for that very reason.

In *Resendez,* the plaintiff slipped and fell near two grape displays. *Resendez,* 988 S.W.2d at 218. One display contained grapes bagged in cellophane, while the other contained grapes for customer sampling. *Id.* The sampling bowl was level, was sitting on ice, and was recessed five inches below the table's surface. *Id.* Each table had three-inch railings around the edges. *Id.* The floor of the produce section had a non-skid surface and floor mats were in place. *Id.* Given that factual situation, the trial court held that evidence that a store has a customer sampling display, without more, is insufficient to show a condition on the premises that poses an unreasonable risk of harm. *Id.* at 219. The case at bar is distinguishable because in this case there is more than evidence that the store had a display on a stock cart. There is evidence that the display was placed too closely to a stocked grocery shelf so as to pose a danger of tripping to a store patron picking items off the shelf.

H.E.B. states that the evidence shows that the cart was placed in the middle of the aisle. There is testimony that the front aisle where this incident occurred is between fourteen and sixteen feet wide.

If H.E.B. is correct in its assertion that the evidence shows that the cart was in the middle of that aisle, then the cart would have been at a minimum of nearly seven feet from the shelf where Nevills was picking up her black-eyed peas. We have examined the pages of testimony to which H.E.B. has referred us and cannot find the testimony showing that the stock cart was so placed. All we found was Rogers' testimony that he would have moved the cart had it been less than three feet from the shelf. In any event, testimony showing that the cart was in the middle of the aisle would have been inconsistent with Nevills' testimony that she tripped over the cart while in the process of turning after picking two cans of black-eyed peas off the shelf and tripping over the cart as she turned to her right to leave. A reasonable jury could have determined from Nevills' testimony that the stock cart was placed less than three feet from the shelf, in an area that the store director conceded would constitute a danger.

█ H.E. B's most prominent argument, and the one relied upon by the trial court, is that the stock cart in the grocery aisle could not constitute a condition posing an unreasonable risk of harm because its size made it open and obvious. The plaintiff in a premises liability case has a duty to prove that the condition in question posed an unreasonable risk of harm, but does not have the burden to show that the condition is not open and obvious. *See Parker v. Highland Park, Inc.,* 565 S.W.2d 512, 520–21 (Tex.1978). Where it is shown that the condition that poses an unreasonable risk of harm is open and obvious, that relates to the plaintiff's conduct and the issue of the plaintiff's contributory negligence. *Id.* We sustain Nevills' contention as presented in her sole issue.

The judgment is REVERSED and REMANDED for a new trial.