Ruth PARKER, Petitioner,

v.

HIGHLAND PARK, INC., Respondent.

No. B-6576.

Supreme Court of Texas.

Feb. 8, 1978.

As Modified on Denial of Rehearing
March 15, 1978.

C. Coit Mock, Fort Worth, for petitioner.

McBryde, Bogle & Green, John H. McBryde, Fort Worth, for respondent.

POPE, Justice.

The question presented by this appeal is whether the no-duty doctrine is still a viable one in the trial of premises cases. This case deals with invitees and tenants and does not involve licensees or trespassers. Mrs. Ruth Parker was injured when she fell while descending a dark stairway located on the premises of Highland Park, Inc. She sued Highland Park and recovered a judgment on a jury verdict for $17,123.00. This case arose before the effective date of the comparative negligence statute. Art. 2212a. The trial court's judgment for Mrs. Parker was upon the jury findings that (1) the stairs were not properly lighted, (2) which caused the stairs to be unusually dangerous for use, (3) Highland Park was negligent in not causing the stairs to be properly lighted, (4) which was a proximate cause of Mrs. Parker's injuries. The jury refused to find (5) that Mrs. Parker was negligent in undertaking to descend the stairs, (6) or in the manner in which she descended the stairs, but (7) found that Mrs. Parker received a warning of the danger as she proceeded down the stairs. She had been visiting Judge and Mrs. Massey. Mrs. Massey had said to her, "Ruth, be careful." The court of court of civil appeals with a divided court reversed the judgment and rendered judgment for Highland Park. 545 S.W.2d 275. That court placed its decision squarely upon the holding that the defendant owed the plaintiff no duty since the darkness in the stairwell was open and obvious to Mrs. Parker, citing *Robert E. McKee, General Contractor, Inc. v. Patterson,* 153 Tex. 517, 271 S.W.2d 391 (1954); *Lowe Chemical Co. v. Greenwood,* 433 S.W.2d 695 (Tex.1968), and *Wesson v. Gillespie,* 382 S.W.2d 921 (Tex.1964). We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

Mrs. Parker went to the apartment of Judge and Mrs. Frank Massey during the afternoon of October 23, 1971. The Masseys had been renting their apartment from Highland Park for about two years. Mrs. Parker and Mrs. Massey are sisters. After dinner and at about eight fifteen in the evening, those three persons prepared to leave the second-floor apartment to drive Mrs. Parker to her home in another part of the city. Upon opening the door they saw

that the foyer outside the Massey apartment and the stairway were in total darkness. While Mrs. Parker waited, Judge Massey descended the steps by holding to the rail and feeling his way down. He expected to open the outside door at the foot of the steps and admit some light. Since it was so dark outside, this did not solve the problem. Mrs. Massey went back into her apartment to obtain a flashlight.

Mrs. Parker and Mrs. Massey then proceeded cautiously to descend the steps. The steps were so narrow that it was easier for persons to go in single file. Mrs. Massey followed Mrs. Parker so she could direct the light on the steps in front of Mrs. Parker who was about three steps in front. She was holding the light low so Mrs. Parker could see the steps. Mrs. Parker held onto the rail on the right side of the steps. After descending six steps Mrs. Parker reached a flat landing at which point the stairs made a right angle turn to the right. There was a step from that landing to a second flat landing and then six more steps to the ground floor. When Mrs. Parker made the turn at the first landing, she did not remember that there was a step which separated the first and second landings. *See Renfro Drug Co. v. Lewis,* 149 Tex. 507, 235 S.W.2d 609 (1950); *Walgreen-Texas Co. v. Shivers,* 137 Tex. 493, 154 S.W.2d 625 (1941). Mrs. Parker said that she had been on the stairs to visit her sister every six weeks to two months and a few times at night, but the stairway was always lighted before. She moved from the first landing and while still holding to the rail, she stepped off the first landing. She testified that she swung around to the right, and she tried to grab the rail with her left hand. She testified that the light from the flashlight was obscured by the right turn and the posts on the stairway.

The Massey apartment shared the common foyer and stairs with another apartment. The foyer and stairs were inside the building but outside the apartments. The Masseys controlled the lights inside their apartment, but Highland Park, Inc. exercised complete control over the area and the lights outside the apartment. The entire apartment complex consisted of 204 apartments and the lights for the halls and stairs were set to come on and go off at predetermined times. An employee of Highland Park, Inc. was responsible for setting the automatic timing device. It had to be reset periodically as the days grew shorter, and by October 23 there was a total darkness by 8:15 P.M., when the accident occurred.

Highland Park says that it is entitled to a favorable judgment because the trial court, over its objection, failed to submit as a part of the plaintiff's issues, a special issue which inquired whether the defendant either created or maintained the dangerous condition, or whether the defendant knew or should have known of the condition. The evidence that Highland Park created the darkened and dangerous condition on the steps is undisputed. By answers to admissions, Highland Park stated that on the second floor there was a light fixture inside the front stairwell and another at the back of the stairwell. There were two similar fixtures on the first floor. There were also lights just outside and inside the back door. All six of those lights were out when the accident occurred. Highland Park admitted that those lights were controlled by a mechanism recessed in the wall inside the back door on the first floor. It admitted that it was "probably one of its employees who was responsible for setting the automatic timer," and "the present information of the defendant is that Jerry Wilson probably had that duty." It said that it did not know who made the last setting or when it was made. It offered no contrary evidence to dispute or explain its answers. There is no evidence that anyone other than defendant had the right to change or ever had changed the timer. The lights came on automatically after the accident but before Mrs. Parker left in the ambulance, so it was not an instance of six defective bulbs being out at the same time. The undisputed proof is that defendant set the automatic timer so the lights would come on after total darkness.

▮ The duty that the landlord owed to the Masseys as tenants extended to their

guest, Mrs. Parker, under the standard stated in Sections 360 and 361 of the *Restatement (Second) of Torts*:

§ 360. Parts of Land Retained in Lessor's Control Which Lessee is Entitled to Use

A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe.

Comment:

*a. Effect of lessee's knowledge of dangerous condition.* The rule stated in this Section applies to subject the lessor to liability to third persons entering the land, irrespective of whether the lessee knows or does not know of the dangerous condition. The lessee may, for example, know that the common entrance to the apartment or office which he has leased has become dangerous for use because of the lessor's failure to maintain it in safe condition. His knowledge may subject him to liability even to his own licensees, if he fails to warn them of the danger. *It will not, however, relieve the lessor of liability for his negligence in permitting the entrance to become dangerous.* [Emphasis added.]

\* \* \* \* \* \*

*c.* A lessor may be liable to an invitee or even to a licensee of the lessee, although neither he nor the lessee would be liable under the same circumstances to their own invitees or licensees. The privilege of the visitor is not based, as is that of the lessor's own invitee or licensee, upon the consent given upon the occasion of the particular visit, but upon the fact that he is entitled to enter by the right of the lessee, who is entitled under his lease to use the part of the land within the control of the lessor not only for himself, but also for the purpose of receiving any persons whom he chooses to admit. This fact is to be taken into account in determining whether the lessor should anticipate harm to the visitor. It follows that the lessor's duty is not always satisfied by warning the lessee or others of the dangerous condition, and that the knowledge of such persons of the danger will not always prevent their recovery. Where, for example, the entrance to an apartment house is dangerously defective, and there is no other available entrance, the third person may be expected to use it notwithstanding any warning, or even his own knowledge of the danger. Unless he is to be charged with contributory negligence, he may recover notwithstanding such warning, or even knowledge.

§ 361. Parts of Land Retained in Lessor's Control but Necessary to Safe Use of Part Leased

A possessor of land who leases a part thereof and retains in his own control any other part which is necessary to the safe use of the leased part, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care

(a) could have discovered the condition and the risk involved, and

(b) could have made the condition safe.

Other expressions of this duty owing a guest of a tenant under these circumstances are 49 Am.Jur.2d *Landlord and Tenant,* § 810 (1970); Annot., *Landlord's Liability— Adequacy of Light,* 66 A.L.R.3d 202, 344–51 (1975); Annot., 24 A.L.R.3d 388, 391–92 (1969).

The court of civil appeals denied judgment for Mrs. Parker without reaching the findings of the jury that the defendant was

negligent and the plaintiff was not. The court of civil appeals held that the plaintiff did not prove that the defendant owed Mrs. Parker a duty, because, by looking back at her state of knowledge, the defendant owed her no duty. This complex and confusing no-duty rule was explained in *Robert E. McKee, General Contractor, Inc. v. Patterson,* 153 Tex. 517, 271 S.W.2d 391 (1954), and in *Halepeska v. Callihan Interests, Inc.,* 371 S.W.2d 368 (Tex.1963). We quote from those cases:

> To determine the existence and the extent of the owner's duty we must therefore look not only to the conduct of the owner but to the conduct of the invitee as well. It may well be that when we examine the conduct of the invitee for the purpose of deciding whether there has been a breach of duty by the owner we necessarily decide, as an incident thereto, the defensive issue of voluntary exposure to risk, with the result that a decision of the first question follows a decision of the second automatically. . . . But this resulting intermingling of the two problems would not justify our rewriting the substantive law of the state to impose a duty where it is so firmly established none exists. Even if voluntary exposure to risk be not pleaded as a defense the duty question would still be present. *McKee v. Patterson, supra,* 271 S.W.2d at 394.

> The "no duty" doctrine is this: the occupier of land or premises is required to keep his land or premises in a reasonably safe condition for his invitees. This includes a duty of the occupier to inspect and to discover dangerous conditions. *Smith v. Henger,* 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 853 (1950); *Genell, Inc. v. Flynn,* 163 Tex. 632, 358 S.W.2d 543 (1962). His duty is to protect his invitees from dangers of which he, the occupier, knows, or (because of his duty to inspect) of which he *should* know in the exercise of ordinary care. *If there are dangers which are not open and obvious, he is under a duty to take such precautions as a reasonably prudent person would take to protect his invitees*

*therefrom or to warn them thereof. But if there are open and obvious dangers of which the invitees know, or of which they are charged with knowledge, then the occupier owes them "no duty" to warn or to protect the invitees. This is so, the cases say, because there is "no duty" to warn a person of things he already knows, or of dangerous conditions or activities which are so open and obvious that as a matter of law he will be charged with knowledge and appreciation thereof.*

> \* \* \* \* \* \*

> So in a suit by an invitee against the occupier, the invitee must not only prove that he was injured as a proximate result of encountering a condition on the premises involving an unreasonable risk of harm, but he must also prove, as part of the plaintiff's case, that the occupier owed him a *duty* to take reasonable precautions to warn him or protect him from such danger, *i. e., the plaintiff must negative "no duty." This is the "no duty"* referred to in the cases. Academically, it may be a rather clumsy concept, but it is still the law. *Houston National Bank v. Adair,* 146 Tex. 387, 207 S.W.2d 374 (1948). [Emphasis added.] *Halepeska, supra,* 371 S.W.2d at 378–79.

The court of civil appeals in this case has followed the rule of *McKee* which required plaintiff invitee not only to prove affirmatively that the defendant was at fault by looking at defendant's conduct, but also to prove the absence of his own subjective knowledge and appreciation of any danger. The rule of *McKee* was that an invitee carried the extra burden to negate "no-duty." It also wrote that the extra burden was "an incident to the defensive issue of voluntary exposure to risk."

In *Halepeska,* a studied effort was made to separate and clarify the no-duty, voluntary assumption of risk and "open and obvious" concepts. The explanation for the long-standing confusion in the terms, of course, is that the subjective knowledge and appreciation elements of no-duty were also

two of the three elements of the volenti (voluntary assumption of risk) doctrine which we discarded in *Farley v. M M Cattle Company,* 529 S.W.2d 751 (Tex.1975). *Halepeska* from the quotation above explains that a plaintiff who has knowledge of a dangerous condition because it is open and obvious "will be charged with knowledge and appreciation thereof."

The inextricable mixing of (1) the duty owed by a defendant and (2) a plaintiff's burden to negate his own knowledge and appreciation with (3) voluntary assumption of risk has been more recently recognized. In *Ellis v. Moore,* 401 S.W.2d 789, 793 (Tex. 1966), we explained how they are intertwined, saying: "Where the assumed risk doctrines *of 'no duty' or volenti* are invoked, the duty of the defendant is to exercise ordinary care to make reasonably safe or to warn." [Emphasis added.] In *Scott v. Liebman,* 404 S.W.2d 288, 292–93 (Tex. 1966), the identification of the no-duty doctrine with voluntary assumption of risk was again stated: "To review, then, the basic concepts of assumed risk (no duty) and to place this opinion in context with others by this Court . . . ." The court then in *Scott* explained that the purpose of a warning is to supply the elements of knowledge and appreciation. Those are two of the three elements of voluntary assumption of risk.

No-duty, as thus explained, was said to defeat a plaintiff's action because a plaintiff's knowledge and appreciation of a danger cut off his action before reaching the issue about a defendant's negligence. As has been noticed before, the plaintiff's knowledge and appreciation are two elements which duplicate, overlap, and are segments of the voluntary assumption of risk doctrines which we abandoned in *Far-*

ley *v. M M Cattle Company,* 529 S.W.2d 751 (Tex.1975). *Adam Dante Corporation v. Sharpe,* 483 S.W.2d 452, 457–58 (Tex.1972).

 We now expressly abolish the so-called no-duty concept in this case and, as expressed in *Farley,* "henceforth in the trial of all actions based on negligence . . ." The reasonableness of an actor's conduct under the circumstances will be determined under principles of contributory negligence. While this case arose prior to the adoption of the comparative negligence statute, in the trial of cases under that statute, one who is contributorily negligent is still entitled to have his negligence compared with that of the other participants in the event.

Our reasons for abolishing the no-duty concept need to be stated:

1. The appendage of "no-duty" to a plaintiff's burden to prove that a defendant owed a duty has contributed confusion which has defied the efforts of our best scholars at explanation and application. This court acknowledged this difficulty when it wrote in *McKee v. Patterson, supra,* "[i]t would greatly simplify our procedural problems if we could follow the course suggested by . . . *Camp v. J. H. Kirkpatrick* . . . and let this class of cases fall into the pattern of the usual negligence case, deciding the question of negligence and breach of duty on the part of the owner by looking only to his conduct and the question of voluntary exposure to risk on the part of the invitee by looking alone to his conduct, but to do so would be to ignore the well-settled law of this state . . . ."[1]

2. This court, based on logic, has already undermined the no-duty rule that the court in *McKee* felt bound by stare decisis to follow. Our decision in 1975 in *Farley v. M M Cattle Company,* 529 S.W.2d 751,[2] abol-

---

1. Ultimately, the Texas Supreme Court may come to the point of deliberately wiping the slate clean and attempting to start over. It may entirely abandon the concepts of "no-duty," volenti non fit injuria, and assumed risk, in favor of simple negligence and contributory negligence . . . . Greenhill, *Assumption of Risk,* 16 Baylor L.Rev. 111, 112 (1964).

2. We therefore hold that for this trial, and henceforth in the trial of all actions based on negligence, volenti non fit injuria—he who consents cannot receive an injury—or, as generally known, voluntary assumption of risk, will no longer be treated as an issue. Rather, the reasonableness of an actor's conduct in confronting a risk will be determined under principles of contributory negligence. *Farley, supra,* 529 S.W.2d at 758.

ished the voluntary assumption of risk doctrine in its entirety, taking an action which this court felt it should not take in 1954 at the time of the *McKee* decision. In our earlier decision in *Adam Dante Corporation v. Sharpe*, 483 S.W.2d 452 (Tex.1972), we held that voluntary assumption of risk should not be submitted in three special issues to the jury, since one issue with an instruction about the elements of the doctrine would suffice. While *Farley* overruled *Adam Dante* by eliminating even that single special issue, our definition of voluntary assumption of risk set out in *Adam Dante* reveals what *Farley* terminated. Voluntary assumption of risk was defined:

> You are instructed that in order for the plaintiff to assume the risk, she must have actually known of the condition which caused her injury and she also must have actually and fully appreciated the nature and extent of the danger involved in encountering the condition, and she must have voluntarily and of her own free will encountered the danger of the condition causing her injuries, if any. 483 S.W.2d at 458 n. 2.

The definition included three elements: (1) knowledge, (2) appreciation, (3) the voluntary encounter. Greenhill, *Assumed Risk*, 20 Sw. L.J. 1, 12 (1966). When *Farley* abolished voluntary assumption of risk, it terminated the whole doctrine, all three elements. The contention now is that the first and second elements (knowledge and appreciation by the plaintiff) in some way survived *Farley* and *Rosas v. Buddies Food Store*, 518 S.W.2d 534 (Tex.1975), and still live under the name of "no-duty." Voluntary assumption of risk included and is inseparable from no-duty.[3] Our decision in *Farley* was that the three factors which comprise the doctrine of voluntary assumption of risk (including the plaintiff's knowledge and appreciation) should be measured by the reasonableness of the actor's conduct. In other words, we held that the action should be decided upon principles of negligence.

3. The legislature by its adoption in 1973 of the comparative negligence statute evidenced a clear policy purpose to apportion negligence according to the fault of the actors. *See generally* Tex.Rev.Civ.Stat. Ann. art. 2212a. That system replaced the harsh system of absolute victory or total defeat of an action by such doctrines as contributory negligence, voluntary assumption of risk, and also the included doctrine known as no-duty. This was a reason assigned in *Farley* and earlier in *Rosas* for the elimination of the no-duty rule in its inclusive form of voluntary assumption of risk. The survival of no-duty (plaintiff's knowledge and appreciation) as a total bar is incompatible with the legislative purpose of the comparative negligence statute. *Farley, Rosas, Adam Dante*, and article 2212a have now wholly eroded any foundation for the *McKee* reasoning grounded upon stare decisis. *See* Note, 7 Tex.Tech.L.Rev. 765, 767–69, 771–72 (1976).

4. The no-duty doctrine is so elusive that precedent is non-predictive and unhelpful. This was a reason assigned for the abolition of no-duty in the form of voluntary assumption of risk. *Rosas v. Buddies Food Store, supra*, 518 S.W.2d at 539. Edgar, *Voluntary Assumption of Risk in Texas Revisited—A Plea for its Abolition*, 26 Sw. L.J. 849 (1972).

5. The no-duty rule imports a plaintiff's subjective knowledge of a condition into an objective general duty rule. As stated in *Rosas*, the intrusion of subjective intent of a plaintiff on a behavioral tort runs counter to the traditional resolution of liability that is determined by objective standards of negligence. *Rosas, supra*, at 538. *See* Keeton, *Annual Survey of Texas Law, Torts*, 24 Sw. L.J. 1, 5–6 (1970); *see also Adam Dante Corporation v. Sharpe*, 483 S.W.2d 452, at 455 and 458, and compare footnote 1 with footnote 2.

6. The no-duty doctrine has been generally condemned. It is a harsh doctrine and

---

3. [W]e have two different concepts of assumed risk: (1) the no duty cases applicable to occupier-invitee situations, and (2) the volenti cases . . . applicable on the occupier's premises and also to other assumed risk situations. Greenhill, *Assumption of Risk*, 16 Baylor L.Rev. 111, 112 (1964).

imports a distrust of juries. Keeton, *Annual Survey of Texas Law, Torts,* 23 Sw. L.J. 1, 10 (1969). "Academically, it may be a rather clumsy concept . . . ." *Halepeska, supra,* 371 S.W.2d at 379. A plaintiff's burden to negate his own knowledge and appreciation, which was required by the rule of *McKee* and *Halepeska,* overlaps and duplicates the voluntary assumption of risk doctrine. *See Adam Dante Corporation v. Sharpe,* 483 S.W.2d 452, 456–57 (Tex.1972); 2 F. Harper & F. James, The Law of Torts, § 21.8, at 1191 (1956). The no-duty doctrine is so unique to Texas that we find no helpful literature in any other jurisdiction. *Halepeska v. Callihan Interests, Inc.,* 371 S.W.2d 368, 377 (Tex.1963). Speaking of the proponents of the no-duty terminology, Professor Robert Keeton has written: ". . . the objective of this group is a good one, but their way of working for its accomplishment leads to confusion." He concludes also that it is an alternative formulation of the assumption of risk doctrine. Keeton, *Assumption of Products Risks,* 19 Sw. L.J. 61, 67–69 (1965). We wrote in *Coleman v. Hudson Gas & Oil Corp.,* 455 S.W.2d 701, 702 (Tex.1970), "In passing, we might question the usefulness of speaking as though there were some special rule in the owner, occupier, general contractor-invitee field requiring the invitee to 'negative no duty.'"

7. A large body of Texas law, which has never been overruled, demonstrates that premises cases are more easily tried under ordinary negligence and contributory negligence principles. Our decision in *Harvey v. Seale,* 362 S.W.2d 310 (Tex.1962), abolished the no-duty requirements in a limited class of premises cases and returned them to trials upon negligence principles, that is, whether the plaintiff and defendant acted reasonably. *See generally* Keeton, *Annual Survey of Texas Law, Torts,* 29 Sw. L.J. 2, 4 (1975). A number of earlier decisions show that all premises cases are more understandably tried that way. In 1952, *Camp v. J. H. Kirkpatrick Co.,* 250 S.W.2d 413 (Tex.Civ.App.1952, writ ref'd n. r. e.), cited and discussed the cases that had tried premises cases as negligence cases. The next year the supreme court in *Triangle Motors of Dallas v. Richmond,* 152 Tex. 354, 258 S.W.2d 60, 63–64 (1953), relied upon the same precedents as controlling over the no-duty holding of *Houston National Bank v. Adair,* 146 Tex. 387, 207 S.W.2d 374 (1948). More recently this court again cited and reasserted the validity and simplicity of the same cases in *Rosas v. Buddies Food Store,* 518 S.W.2d 534, 539 (Tex.1975), as reasons for abolishing voluntary assumption of risk. In *Farley,* we adopted those reasons.

This is a partial list of premises cases that were tried on simple negligence and contributory negligence issues: *Brown v. Frontier Theatres, Inc.,* 369 S.W.2d 299 (Tex. 1963); *Renfro Drug Co. v. Lewis,* 149 Tex. 507, 235 S.W.2d 609 (1950); *Blanks v. Southland Hotel,* 149 Tex. 139, 229 S.W.2d 357 (1950); *Smith v. Henger,* 148 Tex. 456, 226 S.W.2d 425 (1950); *Lang v. Henderson,* 147 Tex. 353, 215 S.W.2d 585 (1948); *United Gas Corporation v. Crawford,* 141 Tex. 332, 172 S.W.2d 297 (1943); *Walgreen-Texas Co. v. Shivers,* 137 Tex. 493, 154 S.W.2d 625 (1941); *McAfee v. Travis Gas Corporation,* 137 Tex. 314, 153 S.W.2d 442 (1941); *Weingarten, Inc. v. Brockman,* 134 Tex. 451, 135 S.W.2d 698, 699 (1940); *Gulf, C. & S. F. Ry. Co. v. Gascamp,* 69 Tex. 545, 7 S.W. 227 (1888); *Dunlap v. Executive Inn Motor Hotel Corporation,* 404 S.W.2d 842 (Tex.Civ. App.1966, writ ref'd n. r. e.); *Mundy v. Stiles,* 257 S.W.2d 750 (Tex.Civ.App.1953, writ ref'd n. r. e.); *H. E. Butt Grocery Co. v. Johnson,* 226 S.W.2d 501 (Tex.Civ.App. 1949, writ ref'd n. r. e.); *Texas & N. O. R. R. Co. v. Wood,* 166 S.W.2d 141 (Tex.Civ. App.1942, no writ); *Northcutt v. Magnolia Petroleum Co.,* 90 S.W.2d 632 (Tex.Civ.App. 1936, writ ref'd).

The facts in *Blanks v. Southland Hotel,* 149 Tex. 139, 229 S.W.2d 357 (1950), were that Mr. Blanks was a tenant on the ninth floor of the hotel. There was no elevator from the eighth to the ninth floor. He fell while ascending the steps in the dark stairs. The defendant hotel pleaded that it owed no duty because Mr. Blanks knew the stairs were dark, but the case was tried on negligence and contributory negligence issues.

This court refused to hold either that there was no duty owing the tenant or that the tenant was contributorily negligent as a matter of law. Writing about Mr. Blanks' knowledge of the condition, this court wrote: "He was aware, as indicated by his movements, that his predicament had become hazardous but such awareness is not conclusive that he was negligent as a matter of law in making use of the passageway." *Blanks, supra,* 229 S.W.2d at 360.

There are many instances in which a person of ordinary prudence may prudently take a risk about which he knows, or has been warned about, or that is open and obvious to him. His conduct under those circumstances is a matter which bears upon his own contributory negligence. Contributory negligence is defined in the case *sub judice* as the "failure to use ordinary care . . . to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances." One's conduct after he is possessed of full knowledge, under the circumstances may be justified or deemed negligent depending upon such things as the plaintiff's status, the nature of the structure, the urgency or lack of it for attempting to reach a destination, the availability of an alternative, one's familiarity or lack of it with the way, the degree and seriousness of the danger, the availability of aid from others, the nature and degree of the darkness, the kind and extent of a warning, and the precautions taken under the circumstances by a plaintiff in walking down the passageway. Those are matters which bear upon "the reasonableness of an actor's conduct in confronting a risk . . under principles of contributory negligence." *Farley, supra,* 529 S.W.2d at 758. *See* Annot., *Premises Liability—Inside Hall,* 24 A.L.R.3d 388, 391–92 (1969); Keeton, *Assumption of Products Risks,* 19 Sw. L.J. 61, 67–69 (1965). It was said in *Camp v. J. H. Kirkpatrick Co.,* 250 S.W.2d 413, 417–18:

> To use an "open and obvious" condition as a separate defense is misleading for

the further reason that it is not every "open and obvious" condition of danger that precludes recovery. Danger is relative, and a person of ordinary care may incur some hazards. This is the holding in *McAfee v. Travis Gas Corporation,* 137 Tex. 314, 153 S.W.2d 442, 447, where a plaintiff was injured when he knowingly went into an area of escaping gas for the purpose of pointing out the condition of danger to the defendant's agent. Though he had actual knowledge of the danger of escaping gas and had such information for two years, yet the Supreme Court said: "It is the established rule in this State that even where a person has knowledge, actual or imputed, of a defect, a question of fact as to negligence is presented unless it can be said, as a matter of law, that a person of ordinary care would not have incurred the risk." And in *Gulf, C. & S. F. R. Co. v. Gasscamp* [sic], 69 Tex. 545, 7 S.W. 227, a plaintiff stopped and personally examined a defect in a bridge and knew of the presence of some danger, but still was not convicted of contributory negligence when he had no choice of routes to his destination. Knowledge of some danger is not always appreciation of the amount of danger. *Temple Electric Light Co. v. Halliburton,* Tex., 136 S.W. 584, affirmed 104 Tex. 493, 140 S.W. 426; *Ridge v. Boulder Creek, etc.,* 60 Cal.App.2d 453, 460, 140 P.2d 990; *Andre v. Allynn,* 84 Cal.App.2d 347, 190 P.2d 949; 30 Tex.Jur., Negligence, § 96. Negligence may still be a fact question when one knows or is chargeable with knowledge of danger, depending upon the measure of care exercised under those circumstances. *Lang v. Henderson,* 147 Tex. 353, 215 S.W.2d 585; *Henwood v. Gilliam,* Tex.Civ.App., 207 S.W.2d 904; *Texas & N. O. R. Co. v. Blake,* Tex.Civ. App., 175 S.W.2d 683; *Northcutt v. Magnolia Petroleum Co.,* Tex.Civ.App., 90 S.W.2d 632, 633; *San Angelo Water Light & Power Co. v. Anderson,* Tex.Civ. App., 244 S.W. 571, 572; 65 C.J.S. Negligence § 121; 30 Tex.Jur., Negligence, § 96. These authorities dispel the idea that anything that can be seen precludes

recovery because it is open and obvious. For these reasons an open and obvious condition should not be confused with the plaintiff's initial and separate burden to prove knowledge of danger on the part of the owner. Nor should it be considered proof of contributory negligence as a matter of law in all instances. The phrase is better considered as a summation of strong facts that display contributory negligence as a matter of law. It includes a summation of the presence of danger and also that the invitee knew and appreciated that presence of danger, or should have. 38 Am.Jur., Negligence, 184. It means that the danger is so great and the condition so known and appreciated that it is clear and convincing to the point that reasonable minds can draw no other conclusion than that plaintiff was negligent. *Northcutt v. Magnolia Petroleum Co.*, Tex.Civ.App., 90 S.W.2d 632, 633; *San Angelo Water Light & Power Co. v. Anderson*, Tex.Civ.App., 244 S.W. 571.

A plaintiff's knowledge, whether it is derived from a warning or from the facts, even if the facts display the danger openly and obviously, is a matter that bears upon his own negligence; it should not affect the defendant's duty. A plaintiff may be contributorily negligent as a matter of law by reason of his conduct after he possesses knowledge of the condition. A condition that is open and obvious is proof of knowledge and appreciation as a matter of law, *Massman-Johnson v. Gundolf*, 484 S.W.2d 555 (Tex.1972), but that phrase is not "a separate concept." *Adam Dante, supra*, 483 S.W.2d at 459. Knowledge and appreciation, though proved as a matter of law, do not necessarily establish contributory negligence as a matter of law. In a case that is controlled by the comparative negligence statute, a plaintiff's contributory negligence that is established as a matter of fact or as a matter of law must then be compared with the negligence of the other parties, assuming that there is a finding of proximate cause in each instance.

*Coffee v. F. W. Woolworth Co.*, 536 S.W.2d 539 (Tex.1976), was recently before this court. It concerned an injury to Mrs. Coffee when she ran into an empty platform inside the defendant's store. The case was tried as a negligence case. The opinion stated the jury findings in support of the plaintiff's negligence theory, but the opinion did not state that the jury refused to find that the plaintiff failed to keep such a lookout as a person using ordinary care would have kept. Our opinion discussed the occupier's contention that the dangerous condition was open and obvious, and we held that the evidence did not establish that state of facts as a matter of law. We should have made clear in the opinion that an open and obvious condition relates to a plaintiff's conduct under the contributory negligence issue.

We conclude that there is evidence which supports the jury findings that Mrs. Parker was not contributorily negligent in undertaking to descend the stairs or in the manner in which she descended the stairs. Cf. *United Gas Corporation v. Crawford*, 141 Tex. 332, 172 S.W.2d 297 (1943). There is evidence that she did not go down the stairs in darkness. She waited until a flashlight was obtained and Judge Massey had successfully moved downstairs ahead of her. She was descending the steps while the light was directed at the steps she was descending. She was holding to the rail and moving slowly and cautiously. See *Triangle Motors of Dallas v. Richmond*, 152 Tex. 354, 258 S.W.2d 60 (1953), *Blanks v. Southland Hotel, supra; Lang v. Henderson, supra; Walgreen-Texas Co. v. Shivers, supra.*

The plaintiff obtained findings that the defendant was negligent and that she was not negligent. We reverse the judgment of the court of civil appeals and affirm that of the trial court.

McGEE, J., concurs.

McGEE, Justice, concurring.

I agree with the opinion, but I would add that there should be no instruction to the

jury concerning an open and obvious situation since that is a factual matter that bears upon a plaintiff's conduct (his contributory negligence) after he has knowledge or is charged with knowledge. Such an instruction would amount to a comment upon the weight of the evidence. I would also add that there should be no instruction concerning knowledge or "no-duty," since a plaintiff's conduct after he possesses knowledge bears upon the reasonableness of his conduct under the circumstances.