Floyd B. THORNAL, Appellant,

v.

CARGILL, INC., et al., Appellees.

No. 8142.

Court of Civil Appeals of Texas, Beaumont.

Oct. 12, 1978.

Rehearing Denied Nov. 2, 1978.

John Fulbright, Beaumont, for appellant.

Cleve Bachman, John D. Rienstra, Jr., John Benckenstein, George Duncan, Beaumont, for appellees.

DIES, Chief Justice.

Plaintiff below, Floyd B. Thornal, sued Leduma Cia. Mar. S/A (Leduma), Cargill, Inc. (Cargill), and the Kansas City Southern

Railway (KCS) for personal injuries allegedly received on May 1, 1974. Leduma was owner of the ship "Costa Flora" which was loading grain from the KCS docks in Port Arthur, Texas. Cargill was the grain dealer and leased the grain storage area, as well as portions of the dock from KCS. The grain was loaded in the ship by longshoremen, of whom plaintiff was one. Plaintiff alleged his injuries resulted from a fall on one of the ramps leading from the dock to the ship.

At the conclusion of the evidence, the court granted an instructed verdict for Leduma. After a jury trial, the court entered judgment on December 14, 1977, that plaintiff take nothing against Leduma, Cargill, and KCS. From this judgment, plaintiff has perfected this appeal.

Plaintiff complains that the court erred in granting Leduma an instructed verdict. It is proper only if there is no evidence to support the submission of a necessary issue, and we must indulge every inference that may be properly drawn from the evidence against the action of the trial court. *Echols v. Wells*, 510 S.W.2d 916 (Tex.1974); *Anderson v. Moore*, 448 S.W.2d 105 (Tex.1969).

■ In the entire chain of this transaction from the buying of the wheat in West Texas, to its delivery in Port Arthur by the KCS, to its loading on Leduma's vessel, Leduma had absolutely no duties or responsibilities. The grain was stored in Cargill's facility, loaded on a conveyer of Cargill, by longshoremen, and the ramp involved was owned, maintained, and repaired by KCS. The master and crew of Leduma's ship had no responsibility or indeed right to interfere or assist in any of these functions, except the master could require loading in a manner to give his vessel the proper trim. See *Abalos v. Oil Development Co. of Texas*, 544 S.W.2d 627, 631 (Tex.1976), and authorities cited therein. See also *Victory Carriers v. Law*, 404 U.S. 202, 212–15, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971). This point is overruled.

■ Plaintiff urges that the trial court erred in failing to grant his motion for new trial as to Cargill because the jury's answer to S.I. No. 8 is so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust. In S.I. No. 8, the jury failed to convict Cargill of negligence in failing to sweep off the grain. This point requires that we examine all the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

It was plaintiff's theory that grain on the ramp, together with rain, made it very slippery.

■ The evidence as to which defendant, Cargill or KCS, had the duty to sweep the ramp was conflicting. One witness testified it was impractical to clean up spilled grain until the loading operation was complete. And all witnesses agreed it was next to impossible to load a ship with grain without spilling some on the docks, ramps, and elsewhere. We believe the answer to this issue has support in the evidence, and accordingly overrule this point.

■ The evidence revealed that several times in the past KCS had repaired the ramp in question and had put cleats and handrails on it. It is undisputed, however, that at the time of plaintiff's alleged injury the ramp had no cleats or handrail on it.

The jury convicted KCS of negligence in several respects in failing to repair the ramp. However, because of the jury's answer to S.I. No. 20, the judgment absolved KCS of liability.

In answer to S.I. No. 20 the jury found that plaintiff's supervisor was aware of the hazard or danger involved in attempting to use the ramp as a walkway.

As previously noted, the judgment in the case at bar was entered on December 14, 1977. KCS argues that the case of *Parker v. Highland Park*, 565 S.W.2d 512 (Tex. 1978), abolished the "no duty" defense, and since it was not delivered until February 8, 1978, the case at bar is not affected by this decision.

This issue seems to us to be assumption of risk (volenti non fit injuria) which was abolished in *Farley v. M M Cattle Company*, 529 S.W.2d 751 (Tex.1975). Assumption of risk is what KCS pled.

At any rate it seems to us that in *Parker v. Highland Park,* supra, at 518, the court held that "no duty" was completely abolished in *Farley* when the court said:

"The definition [assumption of risk] included three elements: (1) knowledge, (2) appreciation, (3) the voluntary encounter. Greenhill, "Assumed Risk," Sw.L.J. 1, 12 (1966). When *Farley* abolished voluntary assumption of risk, it terminated the whole doctrine, all three elements. The contention now is that the first and second elements (knowledge and appreciation by the plaintiff) in some way survived *Farley* and *Rosas v. Buddies Food Store,* 518 S.W.2d 534 (Tex.1975), and still live under the name of 'no duty.' *Voluntary assumption of risk included and is inseparable from no-duty.*" (Emphasis supplied)

A recent case should be added. We cite it with neither approval nor disapproval, since as far as we are aware the question of when a decision of the Texas Supreme Court applies to pending litigation in various stages has never been directly answered. In *Bullington v. Texas Electric Service Co.,* 570 F.2d 1272 (5th Cir. 1978), a plaintiff sued for injuries sustained in 1972. In July 1975 the trial court entered summary judgment on the "no duty" doctrine. When this case reached appeal, *Parker* had been delivered, and the appeals court reversed the trial court citing *Parker,* supra.

We hold that the trial court erred in the case at bar in not disregarding the jury's answer to S.I. No. 20.

■ Our plaintiff was convicted of contributory negligence, and the jury found that he (plaintiff) contributed 25 percent to the accident, while KCS contributed 75 percent; that plaintiff's damages were $26,280.00. Plaintiff contends for this entire sum arguing that the question of whether his failure to keep a proper lookout was negligence was not submitted to the jury,

and the definition of proper lookout did not contain the elements of negligence. We reject this contention because plaintiff did not object to the definition. *Tex.R.Civ.P. 272, 274.* 3 R. McDonald, Texas Civil Practice, §§ 12.28 and 12.29 (Rev.1970). All points of error not addressed in this opinion are overruled.

We now proceed to enter the judgment that should have been entered. It is ordered, adjudged, and decreed that plaintiff—appellant Floyd B. Thornal—shall recover of and from the defendant, Kansas City Southern Railway, $19,710.00, nothing of and from defendant Leduma; nothing of and from the defendant, Cargill, Inc. All costs are taxed against KCS.

AFFIRMED in part; REVERSED and RENDERED in part.

KEITH, Justice, dissenting.

Since I would affirm the judgment in its entirety, I respectfully dissent. I decline to join an opinion which reverses a judgment of a trial court which, *at the time it was entered,* was a correct judgment. The operative dates are those set out in the margin.[1] I admit, as indeed I must, that the "no duty" concept had been severely wounded before *Parker*; but it had not yet suffered the final indignity of public execution; while not robust, it had not then been buried. I express no sorrow or regret at the interment of the doctrine, even though I was instrumental in its birth nearly a quarter century ago. *McKee v. Patterson,* 153 Tex. 517, 271 S.W.2d 391 (1954).

Chief Justice Greenhill, speaking for the court in *Abalos v. Oil Development Co. of Texas,* 544 S.W.2d 627, 631 (fn. 2) (Tex. 1976), used this language to explain the holding:

"The defense of volenti, a voluntary assumption of the risk in the ordinary negligence case, was abolished. *Farley v.*

---

1. Plaintiff was injured on May 1, 1974; the charge was submitted to the jury on September 26, 1977, and the verdict returned the following day; judgment was entered on the verdict on December 14, 1977; the appeal bond was filed on February 6, 1978; and the opinion in *Parker*

*v. Highland Park, Inc.,* 565 S.W.2d 512 (Tex. 1978), was handed down on February 8, 1978, with motion for rehearing being overruled on March 15, 1978. The transcript of the record in this case was filed in our court on March 6, 1978.

*M M Cattle Co.*, 529 S.W.2d 751 (Tex. 1975). The court, however, was careful to state that 'henceforth in the trial of all actions based on negligence, *volenti* . . will no longer be treated as an issue.' 529 S.W.2d at 758. This case was tried and decided by the Court of Civil Appeals before *Farley*. *Farley did not speak* to 'no duty.' Neither does *this* opinion deal with the 'no duty' concept as it relates to 'open and obvious' danger which would have been related to the concept of assumption of the risk. We do not reach that question. See *Lower Neches Valley Authority v. Murphy*, 536 S.W.2d 561 (Tex.1976)." (emphasis supplied) [2]

Indeed, Justice Pope, the author of *Parker*, filed a lengthy and scholarly opinion in *Abalos* wherein he discussed the "no duty" doctrine in detail and the myriad of confusing cases following *McKee v. Patterson* (544 S.W.2d at 635–638). While he concurred with the majority (with only Justices Reavley and Johnson dissenting), the future author of *Parker* did not suggest that the "no duty" doctrine had been abolished in *Farley*; he reserved that enjoyable duty for another day and these are the words he used in *Parker*:

> "*We now expressly abolish the so-called no-duty concept in this case* and, as expressed in *Farley*, 'henceforth in the trial of all actions based on negligence . . .'" (565 S.W.2d at 517, emphasis supplied) [3]

Yet, the majority, dogmatically asserting " 'no duty' was completely abolished in *Farley*", neglects to note that *Farley* did not speak to the concept of "no duty". I disagree since it clearly appears from the quotations set out earlier that the doctrine of

"no duty", *as applied to the type of case under review*, was not abolished until *Parker* was written; and, as applied to this case, it was made to operate prospectively— "henceforth".

The case presently under review had been *tried* and judgment entered long before Justice Pope wrote the language found on page 517. Indeed, jurisdiction of this case had already been vested in this court. There was no "trial" of this cause after the enunciation of the rule in *Parker*—only an appeal of an earlier judgment.

The operative word in both *Farley* (which did not abolish the "no duty" concept) and *Parker* (which did) is "henceforth" and the dictionaries are unanimous in attributing a prospective operative effect to the word. See, e. g., American Heritage Dictionary of the English Language (1969): "From this time forth; from now on." Other similar definitions are to be found in the margin.[4]

I would apply—and unhesitatingly so— the rule laid down in both *Farley* and *Parker*—to trials held after the announcement of the decision in each case. However, I decline to apply such rules retroactively and thereby reverse a case because there has been a change in the rule after the appeal had been perfected. To argue such a position, it seems to me, detracts from the orderly development of the case law which should, I submit, operate prospectively as to all cases other than the one which makes the change in the law. See the discussion by the present Chief Justice concurring in *Watkins v. Southcrest Baptist Church*, 399 S.W.2d 530, 536 (Tex.1966). See and compare *Hendrix v. Jones-Lake Construction Company*, 570 S.W.2d 546 (Tex.Civ.App.—

2. In footnote 3 on the same page, the Chief Justice made it clear that the majority had not agreed to abolish the "no duty" doctrine at least up to that date, saying, "And again, we are not talking about negating 'no duty' in the concept of the assumed risk cases such as *Halepeska v. Callihan Interests, Inc.*, 371 S.W.2d 368 (Tex.1963)."

3. Justice Pope, writing in *Parker* (at 517, fn. 2), reiterated his position, saying: "We therefore hold that for *this trial, and henceforth in the trial of all actions based on negligence* . . . voluntary assumption of risk . . . will no

longer be treated as an issue. . . . *Farley*, supra . . . ." (emphasis supplied)

4. *The Random House Dictionary of the English Language* (Unabridged Ed. 1966): "from now on; from this point forward."

Oxford English Dictionary, Vol. 5, Part I (1901): "From this time forth; from now onwards."

Webster's Third New International Dictionary (Merriam-Webster 1967): "from this point on."

Corpus Christi 1978) (1978, not yet reported, writ history unknown).

In the annotation "Overruling Decision— Application", *10 A.L.R.3d 1371, 1382 (1966),* it is said that Texas is committed to the traditional theory of unlimited retroactive operation of the new decision, citing *Storrie v. Cortes,* 90 Tex. 283, 38 S.W. 154 (1896). But, in *Parker* and other cases [see, e. g., *Farley,* supra, and *Bounds v. Caudle,* 560 S.W.2d 925, 927 (Tex.1977)], the newly announced rule was given prospective operation only. There is much to be said for such an approach to the discharge of the judicial function. See T. Currier, "Prospective Overruling", *51 Virginia L.Rev. 201, 205, et seq. (1965).*

I decline to join in the reversal of a judgment which was errorless when signed and correct when this Court acquired jurisdiction of the case.