# Supreme Court of Texas

No. 20-0369

SandRidge Energy, Inc.,

*Petitioner*,

v.

John Barfield and Tana Barfield, Wife, Individually, and John
Barfield and Tana Barfield as Next Friends of C.B. and K.B.,
Minor Children,

*Respondents*

On Petition for Review from the
Court of Appeals for the Eighth District of Texas

**Argued January 11, 2022**

JUSTICE BLAND delivered the opinion of the Court.

Justice Lehrmann did not participate in the decision.

A landowner generally owes a duty to warn business invitees of a
dangerous condition on the premises when the owner knows or should
know the condition exists.[1] A dangerous condition that is undisputedly

---

[1] *Austin v. Kroger Tex.*, 465 S.W.3d 193, 203 (Tex. 2015). Alternatively,
the landowner may remedy the condition and make the premises safe. *Id.*

open and obvious, however, raises no obligation to warn as a matter of law.[2] In such cases, an invitee exercising ordinary care would have "knowledge and full appreciation of the nature and extent of danger."[3]

Chapter 95 of the Civil Practice and Remedies Code limits a landowner's duty under the common law. In Chapter 95 cases, a premises owner must "adequately warn" a contractor of a danger only when the landowner knows of the condition and exercises some control over the manner in which the work is performed. Last term in *Los Compadres Pescadores, L.L.C. v. Valdez,* we applied the open-and-obvious doctrine to a Chapter 95 premises-liability claim.[4] Because the jury in that case reasonably could have concluded that the dangerous condition was not open and obvious, we held that the doctrine did not bar the plaintiff's recovery.

In this Chapter 95 case, in contrast, it is undisputed that the plaintiff fully appreciated the dangerous condition—an energized power line and transformer—as he was working to de-energize a part of it at the time he was injured. Based on this evidence, the trial court granted summary judgment. Without the benefit of our decision in *Los Compadres*, a divided court of appeals reversed. The court acknowledged that the evidence established that the plaintiff appreciated the danger,

---

[2] *Los Compadres Pescadores, L.L.C. v. Valdez*, 622 S.W.3d 771, 788 (Tex. 2021) (citing *Massman-Johnson v. Gundolf*, 484 S.W.2d 555, 556–57 (Tex. 1972)).

[3] *Id.* (quoting *Adam Dante Corp. v. Sharpe*, 483 S.W.2d 452, 459 (Tex. 1972), *abrogated on other grounds by Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex. 1978)).

[4] *Id.*

but it declined to apply the open-and-obvious doctrine to premises-liability claims arising under Chapter 95.

Chapter 95 requires a landowner with actual knowledge of a dangerous condition to "adequately warn" contractors of the condition when the landowner exercises control over the work being performed. Consistent with the general rule at common law, a landowner does not fail to adequately warn a plaintiff under Chapter 95 when the dangerous condition is demonstrably open and obvious.[5] Because the landowner conclusively established that the plaintiff in this case was adequately warned of the dangerous condition, the trial court properly granted summary judgment. Accordingly, we reverse the judgment of the court of appeals.

## I

## A

SandRidge Energy hired OTI Energy Services to modify electrical distribution lines connected to its oil and gas operations in Andrews County. The Master Services Agreement between SandRidge and OTI required the parties to "mutually agree[] to all material terms and conditions concerning" the work OTI would perform.

John Barfield worked as an OTI power lineman on a crew responsible for adding neutral lines to existing poles carrying energized overhead lines. As part of that work, Barfield de-energized the lower sections of the poles. Working in an elevated bucket, Barfield used an eight-foot-long "hot stick" tool to remove energized "hot taps,

---

[5] Tex. Civ. Prac. & Rem. Code § 95.003(2).

disconnecting fuses if necessary," from the upper crossbars, where the overhead electrical supply lines remained energized. The work brought Barfield within about four feet of energized lines. Barfield testified that SandRidge refused to permit OTI to de-energize the overhead supply lines while OTI performed its work. He wore insulated gloves only "[i]f they were deemed necessary" by OTI or SandRidge. But he acknowledged that the OTI crew performed a job safety analysis every morning that identified energized equipment as a hazard.[6]

After "[s]ix months to a year of good steady training doing it," Barfield encountered a stuck hot tap. He repositioned his grip, choked up about two feet higher on the hot stick, and "went to jerk on [it] real good to get that hot tap loose." Barfield was knocked unconscious. He had sustained an electrical shock, causing severe burns covering 15% of his body and resulting in the amputation of his left arm at the shoulder and his right arm below the elbow.

**B**

Barfield sued SandRidge for negligence, alleging in his petition that SandRidge could not establish a defense under Chapter 95 of the Texas Civil Practice and Remedies Code because SandRidge exercised control over the manner in which he performed the work, knew of the dangerous condition, and failed to adequately warn Barfield of that condition.[7]

---

[6] The crew completed a job hazard analysis worksheet for that day, which identified "hot lines" as a "known hazard."

[7] Barfield and his wife brought claims for themselves and as next friends of their minor children.

4

SandRidge moved for summary judgment, asserting two independent grounds. First, SandRidge contended that it owed no duty to warn Barfield about the presence of energized lines under Chapter 95, because Barfield was fully aware that the lines were energized. SandRidge observed that a premises owner owes no duty to warn a business invitee of open and obvious hazards of which the invitee is fully aware.[8] Second, SandRidge contended that its agreement with OTI established that SandRidge did not exercise or retain control over Barfield's work, as Chapter 95 requires. SandRidge did not dispute that it knew that Barfield was working on energized lines.

Barfield responded that his knowledge of the danger did not eliminate SandRidge's duty to adequately warn him of it under Chapter 95. He further asserted that, because SandRidge required the work to be done on energized lines, an exception to the open-and-obvious doctrine—known as the "necessary use" doctrine—precluded summary judgment. Finally, Barfield adduced evidence that SandRidge controlled the risks of the work environment by refusing to de-energize the supply lines, in contravention of SandRidge's safety policies.

The trial court granted summary judgment. A divided court of appeals reversed, concluding that Barfield's knowledge that the lines were energized did not conclusively disprove SandRidge's failure to adequately warn under Chapter 95.[9] The panel majority determined

---

[8] *See Austin*, 465 S.W.3d at 203 (reciting the "general rule" that a premises owner has no duty to warn an invitee of an open and obvious condition).

[9] 630 S.W.3d 109, 128 (Tex. App.—El Paso 2020).

that Chapter 95 does not incorporate an open-and-obvious exception to the duty to warn or require that the plaintiff be unaware of the dangerous condition.[10] Thus, it concluded, the Legislature did not intend for the plaintiff's actual knowledge of a danger to negate a Chapter 95 claim.[11] The majority further held that the common law "no-duty doctrine" for open and obvious conditions did not apply.[12] Based on these conclusions, the court held that Barfield had raised a fact issue as to whether SandRidge failed to provide an adequate warning, despite Barfield's actual knowledge of the dangerous condition.[13]

Justice Alley dissented, observing that Chapter 95 requires that a landowner give an adequate warning, and a warning must be adequate when a plaintiff concedes that he fully understood the presence of the dangerous condition.[14] Justice Alley also rejected the applicability of the necessary-use exception because "Barfield did not show that an electrical contractor would be unable to avoid an unreasonable risk in

---

[10] *Id.* at 127.

[11] *Id.* at 128.

[12] *Id.* (citing *Parker v. Highland Park*, 565 S.W.2d 512, 521 (Tex. 1978)).

[13] *Id.* at 130. The panel majority further concluded that a fact issue exists as to whether SandRidge exercised control over Barfield's work. *Id.* at 122. Because we hold that Barfield's knowledge and full appreciation of the dangerous condition precludes a finding that he lacked an adequate warning, we do not reach SandRidge's alternative challenge to the court of appeals' decision.

[14] *Id.* at 133 (Alley, J., dissenting) ("Requiring a landowner to warn about risks the invitee is well aware, and perhaps more aware of by virtue of his or her expertise, hits the absurd or nonsensical button for me.").

working around energized power lines."[15] We granted SandRidge's petition for review.

## II

Chapter 95 applies to a negligence claim alleging personal injury or property damage, when brought by a contractor or its employee against a premises owner, if the claim "arises from the condition or use of an improvement to real property where the contractor . . . constructs, repairs, renovates, or modifies the improvement."[16] Under Chapter 95, a property owner is not liable unless (1) "the property owner exercises or retains some control over the manner in which the work is performed" and (2) the owner "had actual knowledge of the danger or condition resulting in the personal injury . . . and failed to adequately warn" of it.[17]

---

[15] *Id.*

[16] Tex. Civ. Prac. & Rem. Code § 95.002. Chapter 95 applies to a "claim," which is defined in § 95.001 as "a claim for damages caused by negligence." *Id.* § 95.001(1).

[17] *Id.* § 95.003. The statute provides in full:

A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace unless:

(1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and

7

## A

We address first the court of appeals' conclusion that Barfield adduced evidence that SandRidge "failed to adequately warn" him of the danger posed by the energized line sufficient to raise a fact issue.[18] We review the trial court's summary judgment de novo, viewing the evidence in a light favorable to Barfield.[19] To prevail, SandRidge must prove that no genuine issue of material fact exists, such that it is entitled to judgment as a matter of law.[20]

The Legislature does not define or explain what makes a warning "adequate" under Chapter 95, but neither does it act in a vacuum. Absent a textual contradiction, we may conclude that the Legislature uses terms that have a developed meaning at common law "for the

---

> (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

*Id.*

[18] *See id.* § 95.003(2). The parties do not dispute that the energized line and transformer that Barfield was working on when he was injured were part of the improvement for Chapter 95 purposes. *See Energen Res. Corp. v. Wallace*, __ S.W.3d __, __ 2022 WL 726976 (Tex. 2022) (holding that a claim must arise from the condition or use of the improvement on which the contractor is working to apply Chapter 95).

[19] *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

[20] *Id.* at 215–16; Tex. R. Civ. P. 166a(c).

purpose of conveying a meaning consistent with that which we historically afforded to it."[21]

Chapter 95 is not a pure codification of the common law. Rather, Chapter 95 limits premises liability for injuries to contractors and their employees to those instances in which landowners exercise control over the work and possess actual knowledge of the injury-causing condition, and then only if the owner fails to provide an adequate warning.[22]

By limiting an owner's liability to contractors and their employees to circumstances in which the owner exercises control over the work and has actual knowledge of the danger, the Legislature did not indicate that "adequately warn" means anything other than its usage at common law. As with other terms in the statute, this term incorporates the common-law understanding of an adequate warning into Chapter 95.[23]

At common law, a landowner must "give such warning that the [invitee] may decide intelligently whether or not to accept the invitation,

---

[21] *Phillips v. Bramlett*, 407 S.W.3d 229, 241 (Tex. 2013); *see also Amazon.com, Inc. v. McMillan*, 625 S.W.3d 101, 106–07 (Tex. 2021) (applying the common law of products liability in interpreting seller liability statute).

[22] In contrast, at common law, a premises owner may be liable for failing to warn of a dangerous condition of which the owner did not know, but should have discovered by exercising reasonable care. *Compare, e.g.*, *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000) ("[T]he elements of a premises claim are: (1) Actual or constructive knowledge of a condition on the premises by the owner or occupier . . . ."), *with* Tex. Civ. Prac. & Rem. Code § 95.003 ("A property owner is not liable . . . unless . . . the property owner had actual knowledge of the danger or condition . . . .").

[23] *See Los Compadres*, 622 S.W.3d at 780–81, 787 ("control"); *Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 568 (Tex. 2016) ("actual knowledge"); *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 49–50 (Tex. 2015) ("condition or use").

or may protect himself against the danger if he does accept it."[24] Such a warning neutralizes the condition "because the law presumes that invitees will take reasonable measures to protect themselves against known risks, which may include a decision not to accept the invitation to enter onto the landowner's premises."[25] Thus, when an invitee has "'knowledge and full appreciation of the nature and extent of danger,' such that 'knowledge and appreciation of the danger are considered as proved as a matter of law,'" then the landowner has no duty to warn of it.[26] In other words, if a warning would not improve upon an invitee's knowledge of the danger, then the law does not require a landowner to deliver one.

The same holds true for interpreting whether a warning is "adequate" under Chapter 95. We first alluded to the applicability of the open-and-obvious doctrine to Chapter 95 cases in *Ineos USA, LLC v. Elmgren*.[27] There, we observed that a property owner with "actual knowledge" of flammable gases on the premises could not have failed to adequately warn of that danger "because the injured worker would also always have such knowledge."[28] We applied the doctrine more recently in *Los Compadres*, stating that a property owner generally has no

---

[24] Restatement (Second) of Torts § 343 cmt. b (1965), *cited with approval in Austin*, 465 S.W.3d at 203.

[25] *Austin*, 465 S.W.3d at 203.

[26] *Los Compadres*, 622 S.W.3d at 788 (quoting *Adam Dante Corp.*, 483 S.W.2d at 459).

[27] 505 S.W.3d 555, 568 (Tex. 2016).

[28] *Id.* at 569.

10

obligation to warn of a danger when either, objectively, "the danger is open and obvious" or, subjectively, the claimant "had actual knowledge of the dangerous condition."[29]

The court of appeals concluded that the Legislature enacted Chapter 95 at a time when the common law had abrogated the open-and-obvious doctrine, relying on our decision in *Parker v. Highland Park*.[30] Long before the advent of Chapter 95, however, the Court recognized that *Parker* did not eliminate the doctrine.[31] *Parker* instead eliminated the plaintiff's affirmative burden to disprove that a condition was open and obvious, such that it became a defense to liability and not an element of the plaintiff's case to negate.[32] The Court recognized as much in an opinion issued solely to correct this misunderstanding of *Parker*, stating that the "rule that the plaintiff does not have the burden to obtain findings that disprove his own fault does not, however, mean that a plaintiff is excused from proving the defendant had a duty and breached it."[33] This clarification of *Parker* came a decade before Chapter

---

[29] 622 S.W.3d at 788 & n.13.

[30] 630 S.W.3d at 128 (citing *Parker*, 565 S.W.2d at 517).

[31] *Dixon v. Van Waters & Rogers*, 682 S.W.2d 533, 533–34 (Tex. 1984) (per curiam).

[32] *Id.*; *see also Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 216 (Tex. 2008) (reinforcing *Dixon*'s clarification of *Parker*). Before *Parker*, Texas courts followed a rule that when a condition is open and obvious, the plaintiff must "prove the absence of his own subjective knowledge and appreciation of any danger." *Parker,* 565 S.W.2d at 516.

[33] *Dixon*, 682 S.W.2d at 533–34.

95 was enacted; it does not support the conclusion that the Legislature imported *Parker* in the manner that the court of appeals suggested.[34]

Barfield admits that he knew that the supply line was energized and posed a danger. He was in the process of de-energizing an energized circuit at the time he was injured and had done so "hundreds of times." Barfield's knowledge of the danger posed by the energized lines could not be improved upon by a warning from SandRidge. The common law does not require SandRidge to have warned Barfield of the danger that he understood and appreciated;[35] therefore, SandRidge established that it did not "fail[] to adequately warn" him of the danger under Chapter 95.[36]

**B**

Barfield alternatively argues that, if Chapter 95 incorporates the open-and-obvious doctrine, then the statute must also incorporate the necessary-use exception to that doctrine, and he has raised a fact issue as to the exception. The court of appeals did not reach this question.

The necessary-use exception "recognizes a landowner's duty to make its premises safe when, despite [the invitee's] awareness of the risks, it is necessary that the invitee use the dangerous premises and the landowner should have anticipated that the invitee is unable to take

---

[34] Act of May 8, 1995, 74th Leg., R.S., ch. 136, § 2, 1995 Tex. Gen. Laws 971, 976 (codified at Tex. Civ. Prac. & Rem. Code § 95.001–.004).

[35] *E.g.*, *Moritz*, 257 S.W.3d at 215–16 (landowner not required to warn independent contractor that loading ramp lacked handrails, where condition of loading ramp was open and obvious).

[36] Tex. Civ. Prac. & Rem. Code § 95.003(2).

measures to avoid the risk."[37] The necessary-use exception holds, in effect, that in some unreasonably dangerous situations, no warning can be adequate.

Our Court has expressed doubt that the necessary-use exception applies to independent contractors. In *General Electric v. Moritz*, we observed that "one who hires an independent contractor generally expects the contractor to take into account any open and obvious premises defects in deciding how the work should be done, what equipment to use in doing it, and whether its workers need any warnings."[38] The claimed premises defect in *Moritz* was a loading ramp without railings. The absence of the railings was open and obvious to the employee of the independent contractor, and therefore the landowner did not owe a duty to warn the contractor's employee. Our Court further rejected the application of the necessary-use exception outlined in *Parker*, observing that the duties in that case "are not necessarily the same" as those owed to contractors working on the premises.[39]

Barfield argues that SandRidge anticipated that Barfield could not avoid the danger of energized lines, relying on SandRidge's safety policies that cautioned against performing work on them. The policies provide that "[l]ive parts to which an individual may be exposed must be de-energized before the person works on or near them, unless it can be shown that de-energizing . . . is infeasible due to equipment design or

---

[37] *Austin*, 465 S.W.3d at 208.

[38] 257 S.W.3d at 215–16.

[39] *Id.* at 218.

operational limitations." The policies describe safety measures that must be taken when lines remain energized, including limiting the work to "Qualified Persons" using suitable work practices.[40] Far from suggesting that SandRidge should have anticipated that the danger to Barfield was both unreasonable and unavoidable, the safety policies foresee that experienced personnel with the proper equipment can safely perform work adjacent to energized lines.

Accordingly, we need not resolve whether the necessary-use exception applies to contractors—either at common law or under Chapter 95—because the exception is not met here. To invoke the exception, a plaintiff must show that the landowner would anticipate that the invitee is "unable to take measures to avoid the risk."[41] Barfield worked near the energized supply line for at least six months prior to his injury. He had disconnected hot taps "hundreds of times," and every pole he had de-energized had energized lines atop it. His hot stick tool was specialized for use on energized lines. SandRidge could expect that OTI would take the energized lines into account in instructing and equipping Barfield to avoid the risk.

*          *          *

---

[40] Barfield does not argue that he was not a Qualified Person.

[41] *Austin*, 465 S.W.3d at 208.

14

Because the evidence conclusively establishes that Barfield was fully aware of the dangerous condition that caused his injury, the trial court properly granted summary judgment. We reverse the judgment of the court of appeals and reinstate the trial court's summary judgment.

_____
Jane N. Bland
Justice

**OPINION DELIVERED:** March 18, 2022