IN THE SUPREME COURT OF TEXAS
 
════════════
No. 06-1022
════════════
 
Del Lago 
Partners, Inc., and Del Lago Partners, L.P. 
doing business under the 
assumed name of 
Del Lago Golf Resort & 
Conference Center,
and BMC-The Benchmark 
Management Company, Petitioners,
 
v.
 
Bradley Smith, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the Tenth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued December 6, 
2007
 
 
            
Justice Hecht, joined by 
Justice Johnson, dissenting.
 
 
            
The rule in Texas is that a possessor of land discharges his duty to protect an 
entrant from a condition that poses an unreasonable risk of harm by giving an 
adequate warning.[1] Now the Court tells us that “in some 
circumstances” no warning can be adequate. Which ones, exactly, the Court does 
not specify, saying only that Bradley Smith’s full appreciation of the risk of 
injury from a bar fight “hardly seems” adequate.[2] So the rule has become that an adequate 
warning discharges a land possessor’s duty except in circumstances when any 
warning hardly seems adequate. In other words, there is no rule, as the Court 
admits: “We do not announce a general rule today.”[3] The land possessor who simply wants to be 
sure to avoid any exposure to liability is left without guidance.
            
The Court’s application of its non-rule in this case portends a misguided change 
in the law. It is quite possible that Smith would not have been injured 
in a fight at the Grandstand Bar if the Del Lago Resort had provided better 
security. But it is quite certain he would not have been injured if he 
had left the Bar by either of its exits at any time during the 90 minutes he 
thought a fight was obvious, as he was completely free to do. The Court’s 
holding in this case is that a possessor of land must protect an entrant from a 
potentially dangerous condition that any reasonable person could clearly see, 
fully appreciate, and easily avoid. This has never been the law of Texas. It is 
not the law in most states, and for good reason. It exposes a possessor of land 
to liability for harm that any reasonable person could have avoided.
            
The rule in section 343A(1) of the Restatement 
(Second) of Torts is to the contrary:
 
A possessor of land is not liable to his invitees for physical 
harm caused to them by any activity or condition on the land whose danger is 
known or obvious to them, unless the possessor should anticipate the harm 
despite such knowledge or obviousness.[4]
 
Based on this rule, I would reverse and render judgment for Del 
Lago. Accordingly, I respectfully dissent.
I
            
Bradley Smith, 29, and a large crowd of his Sigma Chi fraternity brothers had 
been in the Del Lago Resort’s Grandstand Bar for several hours celebrating their 
fraternity’s 40th reunion when around midnight, in came a wedding party. 
Everyone had been drinking, and within a few minutes, a man in the wedding party 
apparently took umbrage at advances being made upon women in his party by the 
fraternity brothers. Recurrent shouting and shoving ensued for some 90 minutes, 
escalating in frequency and intensity with the approach of closing time. From 
the tension in the room, Smith — who recalled having had only one beer all night 
and could therefore clearly appreciate what was happening — thought it obvious 
to all there would be a fight. As one of the brothers testified at trial: “I 
mean, if you didn’t know that this was going on, then you’re either blind or 
deaf or don’t care.”
            
Security officers were on duty at the Resort, and had they been called to the 
Bar at the first sign of trouble, the fight that erupted in the doorway, just as 
the wait staff was insisting that everyone leave, might have been prevented. 
Smith was not part of that fight, but his friend Spencer Forsythe was. At trial, 
Forsythe recounted:
 
Q         [T]here were 
about forty Sigma Chi guys there, right?
 
A         I would say 
so.
 
Q         Ten or 
fifteen in the wedding party, right?
 
A         
Right.
 
* * *
 
Q         And some of 
the Sigma Chi fellows down at one end of the bar are having some words with the 
people in the wedding party, right?
 
A         
Right.
 
* * *
 
Q         So you were 
concerned when you saw this verbal altercation go on between your Sigma Chi 
friends and these wedding party friends that this thing could develop into a bar 
fight?
 
A         
Sure.
 
* * *
 
Q         Then what 
happens is . . . that a group of your friends 
— people you knew, right? Sigma Chi fellows? — moved, 
kind of, down towards the door? Not at the door, but towards the door, 
right?
 
A         
Right.
 
Q         And we have 
some chest-thumping, that type of thing, right?
 
A         
Right.
 
Q         And you 
chose to go to that fight, right?
 
A         
Yes. I — yes, I did.
 
Q         Were you 
sitting or standing at the bar?
 
A         I was 
actually — I was leaning on the bar.
 
Q         Okay. You 
were leaning on the bar, and you looked down at the other part of the bar over 
here and you see some of your friends, and they’re kind of doing the whole chest 
thing, the whole “I’m a tough guy” thing, right?
 
A         
Right.
 
* * *
 
Q         You walked 
right over here to it, didn’t you.
 
A         Okay. Yes. 
Yes.
 
Q         You came — 

 
A         
Yes.
 
Q         You came 
over here to support your friends in the Sigma Chi, didn’t you?
 
A         
Right.
 
Q         You wanted 
to show some force and show that you were here for them?
 
A         
Right. Yes.
 
Q         You made 
that decision?
 
A         I made that 
decision.
 
* * *
 
Q         And then 
once you interjected yourself into that situation, now you’re there, and now 
you’re in the fight, right?
 
A         After a few 
minutes. Yes.
 
            
Smith had not taken part in any of the evening’s altercations and had stayed in 
another area of the Bar. He entered the fray at closing solely to rescue 
Forsythe. He testified at trial:
 
 
Q         Were you in 
any way in the middle of this? Involved in the conflict?
 
A         No, 
ma’am. I was actually up against — my 
right side was against this wall.
 
* * *
 
Q         Now what was 
the extent of your involvement in this fight? If you could, tell the 
jury.
 
A         
The only involvement I had was going back 
in to get Spencer out.
 
Forsythe testified that he could 
have left at any time before the fight, and could have used the Bar’s other 
exit, but chose not to:
 
 
Q         [T]here are 
a couple of exits out of The Grandstand, right?
 
A         
Yes.
 
* * *
 
Q         And you can 
use either one of those exits as long as it’s during the hours of the club, 
correct?
 
A         
Yes.
 
* * *
 
Q         Did you, at 
that time, choose to leave the bar —
 
A         
No.
 
Q         — through 
either exit?
 
A         
No. I did not.
 
Q         Did, at that 
time, you say, “Look, let’s go out to our cottages, and let’s just hang out 
there; these guys are too much of a hassle”?
 
A         
No. No. I did not.
 
* * *
 
Q         You could’ve 
invited several of the Sigma Chi fellows, say, “Let’s go out to the cottage,” or 
“Let’s go back to the lobby,” “Let’s get away from the situation which now I’m 
concerned about”, right?
 
A         
Right.
 
Q         And you 
chose not to do that?
 
A         
Right.
 
* * *
 
Q         If you had 
chosen to take one of the two exits and go back to your cottage or go to some 
other part of the resort, you wouldn’t have been involved in that fight, 
right?
 
A         
Right.
 
Presumably, Smith had the same 
options. Forsythe acknowledged that he could have asked for security to be 
called:
 
Q         Or if you’d 
chosen — since you said you were concerned about it — if you’d chosen to advise 
the wait staff to go get security, that fight wouldn’t have happened, 
right?
 
A         
Right.
 
* * *
 
Q         If it was so 
obvious to you, Mr. Forsythe, that this verbal incident was going to break into 
a fight over here — if it was so obvious to you — why didn’t you stop one of the 
wait staff and say, “I assume somebody’s on the way; have you guys got somebody 
on the way?” Why didn’t you do that?
 
A         I don’t — 
why was it my responsibility?
 
There is no reason to think Smith 
could not have done the same. And Forsythe admitted that even inside the bar, he 
could have stayed completely out of the fight:
 
Q         Okay. Now, 
if you’d been sitting back over here, leaning up against the bar like you were 
before, you wouldn’t have been in that fight, right?
 
A         Most 
likely. Right.
 
Smith, in fact, had stayed out of 
the fight until he ventured back to rescue Forsythe.
 
            
Another fraternity brother, Cesar Lopez, stayed out of the fight altogether 
because, as he testified: “I’m not a fighter. I had to go to work Monday 
morning. I didn’t want to go to work with a black eye from some fight.” He 
added:
Q         As soon as 
you saw that blows were happening, you said you backed away, you didn’t want to 
get in a fight?
 
A         
Right.
 
Q         Well, where 
did you go?
 
A         Back towards 
the bar.
 
Q         Okay. You 
played it safe?
 
A         
Yes.
 
Q         You decided 
to play it safe and backed away?
 
A         
Right.
 
Q         And you were 
not injured?
 
A         
No.
 
Smith, like Lopez, could have 
played it safe.
 
II
            
Smith’s only claim, based on premises liability, is that Del Lago is liable for 
failing to protect him from an unreasonably dangerous condition in the 
Grandstand Bar, viz, the tension among the patrons that led to a fight. The 
settled rule in Texas is that a possessor of land “must either adequately warn” 
an entrant onto the property of an unreasonably dangerous condition “or make the 
condition reasonably safe”;[5] he need not do both.[6] There is no question that Smith was fully 
aware that a fight was brewing, not because of any sign displayed by the Bar, 
but because of events unfolding before his very eyes for 90 minutes, and that he 
had a ready means of avoiding all injury.
            
While an adequate warning discharges a land possessor’s duty, as the Court says, 
“in some circumstances, no warning can adequately 
substitute for taking reasonably prudent steps to make the premises safe.”[7] Those circumstances are to be found in 
Parker v. Highland Park, Inc.[8] Parker, a widow in her late 60s, tripped 
and fell at night in an unlit stairwell while descending from an apartment 
belonging to her sister and brother-in-law, the Masseys. It was obvious that the 
stairwell was dark and therefore dangerous, but there was no better way to 
leave. The Masseys escorted Parker down the stairs, Justice Massey leading the 
way while his wife held a flashlight to illuminate the steps, but Parker still 
stumbled and fell. We concluded that Parker was not precluded from recovery 
merely because the danger due to the darkness was obvious. No warning of 
tripping in the dark would have kept her from falling. She could see the danger 
for herself, and so could the Masseys. They used the only exit reasonably 
available and took every precaution.
            
But suppose Parker could have avoided all danger by using an identical, well-lit 
stairwell adjacent to the dark one. Would the landowner have been liable for 
letting the light go out in one stairwell when any reasonable person would be 
expected to take the other one? Surely the answer is no. The Parker case 
illustrates the situation in which no warning is adequate: when heeding it 
cannot prevent harm. Parker and Smith were both fully aware of the risk of 
danger. The crucial difference between Parker’s situation and Smith’s is that 
Parker had no realistic way of avoiding the risk of descending the darkened 
stairs, while Smith could easily have avoided being hurt in a fight by leaving 
early or through another exit. The risk of danger to Parker was unavoidable; 
Smith need not have run any risk at all. 
 
            
A landowner may be liable for an unreasonably dangerous condition, even if it is 
open and obvious, but not if a reasonable person would avert harm. That is the 
rule of section 343A(1) of the Restatement (Second) 
of Torts, which states:
A possessor of land is not liable to his invitees for physical 
harm caused to them by any activity or condition on the land whose danger is 
known or obvious to them, unless the possessor should anticipate the harm 
despite such knowledge or obviousness.[9]
 
It is also the 
rule in most states.[10]
            
The Court argues that under Parker, the obviousness of a risk never 
relieves a possessor of land from the duty to protect an entrant; in every case 
both parties’ fault must be determined and responsibility allocated between 
them. This is incorrect for at least three reasons. First, the Court went out of 
its way to reject this broad reading of Parker shortly after that case 
was decided. In Dixon v. Van Waters and Rogers, we denied the application 
for writ of error but wrote to correct the same misinterpretation of 
Parker that the Court now espouses:
 
The term “no-duty,” as used in Parker, referred to the 
oddity that had uniquely developed in Texas to confuse negligence law. It meant 
that a plaintiff had the burden to negate his own knowledge and his own 
appreciation of a danger. The rule that the plaintiff does not have the burden 
to obtain findings that disprove his own fault does not, however, mean that a 
plaintiff is excused from proving the defendant had a duty and breached it. A 
plaintiff does not have the burden to prove and obtain findings that he lacked 
knowledge and appreciation of a danger; he must, however, prove the defendant 
had a duty and breached it.[11]
 
Second, 
Parker did not purport to address the situation in which an entrant to 
property was not only fully aware of a risk of harm but fully capable of 
avoiding it. The Court cites this passage in Parker:
 
A plaintiff’s knowledge, whether it is derived from a warning 
or from the facts, even if the facts display the danger openly and obviously, is 
a matter that bears upon his own negligence; it should not affect the 
defendant’s duty.[12]
 
That was true 
in the context in which it was written, but a plaintiff’s awareness of a risk of 
harm, when coupled with a safe alternative for proceeding, is relevant in 
determining whether a reasonable person would ever incur the risk, and therefore 
whether the land possessor should be obliged to protect against it. And third, 
we have continued to analyze the duty owed by a possessor of land in different 
circumstances.[13] The obviousness 
of risk is but one factor among others, repeatedly considered by this Court, in 
determining the nature of a land possessor’s duty.
            
The Court protests that to hold that Del Lago owed Smith no duty is tantamount 
to reviving the long-rejected absolute defense of voluntary assumption of the 
risk, but this is not true. We rejected the defense because it placed undue 
weight on the subjective intent of the plaintiff in a negligence action governed 
by an objective reasonable-person test.[14] The rule stated in section 343A(1) of the Restatement (Second) is an objective 
rule. Under that rule, the issue is not, subjectively, whether the plaintiff 
voluntarily chose to risk harm, but objectively, whether a reasonable person 
could have avoided harm. Thus, the defense would have barred Parker’s recovery, 
but section 343A(1) would not. An entrant is not denied 
recovery because he subjectively consented to assume the risk but because any 
reasonable person would have avoided it. Defining Del Lago’s duty does not 
reintroduce the defense through a back door. 
            
The Court says that a warning to Smith that a fight was imminent “hardly seems 
an adequate substitute for calling security or taking other reasonable steps 
during the course of the evening to prevent the fight.”[15] Calling security could have 
helped — the jury found it would have — but it would not have guaranteed Smith’s 
safety. The presence of officers might have brought reason to a bar full of men 
who had been drinking and cursing each other all night. Or if not, perhaps the 
officers could have arrested them all and carted them off before one slugged 
another. But whatever quieting influence security officers could have had, one 
absolutely sure way for Smith, who had drunk only one beer all night, to avoid 
injury was to walk out one of the exits before things escalated. If Smith had 
had no warning and no sure means of protecting himself, then I would agree that 
Del Lago was obliged to protect him. But he did.
            
If Smith’s full appreciation of the risk and ample opportunity to avoid it 
hardly seemed an adequate substitute for calling security, the Court never says 
why. Nor does it attempt to explain how its notions about adequate substitutes 
provide a workable rule of law. The Court’s job is not to offer its musings on 
the case but to state a clear rule of law, which it acknowledges it does not do: 
“We do not announce a general rule today”,[16] only a “narrow and fact-specific 
holding.”[17]
            
Legal duties should be determined categorically rather than ad hoc, should be 
based on sound policy, and should be as clear as possible. Section 343A(1) does all that. It applies an objective standard in 
all circumstances. It recognizes that as a policy matter, a possessor of land is 
entitled to know, before injury has occurred, what the law requires and whether 
he has complied with it. It embodies the policy that obedience is better than 
the sacrifices made in the time and expense of a lawsuit.
* * *
            
Any reasonable person who saw a bar fight brewing and was concerned for his 
safety should be expected to avoid it if he could. Smith, Forsythe, and Morgan 
could easily have avoided the fight in the Grandstand Bar, and Morgan did. As he 
said, he “played it safe”. Smith and Forsythe did not. Under the rule in section 
343A(1), Del Lago’s duty to Smith was fully discharged. 
I would therefore reverse and render judgment for Del Lago. Because the Court 
disagrees, I respectfully dissent.
 
                                                                        
                                                                                    

                                                                        
Nathan L. Hecht
                                                                        
Justice
Opinion delivered: April 2, 
2010






[1] State v. Williams, 940 S.W.2d 583, 584 (Tex. 1996) (per 
curiam).

[2] 
Ante 
at ___ n.34.

[3] Ante at 
___.

[4] 
Restatement (Second) of 
Torts § 343A(1) (1965).

[5] 
TXI Operations, L.P. v. Perry, 278 S.W.3d 763, 765 (Tex. 2009); accord 
State v. Williams, 940 S.W.2d 583, 584 (Tex. 1996) (per curiam); State 
Dep’t of Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 237 (Tex. 
1992); see Corbin v. Safeway Stores, Inc., 648 S.W.2d 292, 295 
(Tex. 1983); Adam Dante Corp. v. Sharpe, 483 S.W.2d 452, 454-455 (Tex. 
1972) (overruled on other grounds, as noted in Parker v. Highland Park, 
Inc., 565 S.W.2d 512, 517-518 (Tex. 1978), by Farley v. M M Cattle 
Co., 529 S.W.2d 751, 758 (Tex. 1975)); see also Restatement (Second) of Torts § 343 
(1965).

[6] 
Williams, 940 S.W.2d at 584 (“The State argues that it had a 
duty to warn or make safe, but not both. In other words, the State argues that 
it was not negligent unless it neither adequately warned Williams 
nor made the condition reasonably safe. Stated differently still, the 
State argues that it was not negligent unless it both failed to 
adequately warn Williams and failed to make the condition reasonably 
safe. We agree with the State.”).

[7] 
Ante 
at ___ n.34; see ante at ___.

[8] 565 S.W.2d 512 (Tex. 1978).

[9] 
Restatement (Second) of 
Torts § 343A(1) (1965). Contrary to the Court’s suggestion, the 
proposed Restatement (Third) does not abandon section 343A(1). Restatement 
(Third) of Torts: Liab. for Physical and Emotional Harm § 51, cmt. k (Tentative Draft No. 6, 2009) (“Section 343A(1) of the 
Restatement Second of Torts requires possessors to take reasonable precautions 
for known or obvious dangers when the possessor ‘should anticipate the harm 
despite such knowledge or obviousness.’ The duty imposed in this Section, as 
amplified in this Comment, is consistent with § 343A 
. . . .”).

[10] See 
Dolgencorp, Inc. v. Taylor, No. 1070900, 2009 Ala. LEXIS 150, at *10-12, 
2009 WL 1643347, at *3-4 (Ala. June 12, 2009) (adopting invitor’s argument that 
it, by establishing its affirmative defense that the condition was open and 
obvious, negated its duty to invitee, and defeated invitee’s injury claim 
without the operation of affirmative defenses like contributory negligence or 
assumption of the risk); Kuykendall v. Newgent, 504 S.W.2d 344, 345 (Ark. 
1974) (“The duties of owners and occupiers of land to business invitees usually 
end when the danger is either known or obvious to the invitee. However, most 
authorities . . . recognize that under some circumstances a possessor of land 
may owe a duty to the business invitee despite the knowledge of the latter.”); 
Shanley v. Am. Olive Co., 197 P. 793, 794 (Cal. 1921) (“[O]wner is 
entitled to assume that such invitee will perceive that which would be obvious 
to him upon the ordinary use of his own senses. He is not required to give to 
the invitee notice or warning of an obvious danger.”); Fleming v. 
Garnett, 646 A.2d 1308, 1312-1313 (Conn. 1994) (landowner has no duty to 
warn invitee of dangerous condition of which invitee was or should have been 
aware of); Ashcroft v. Calder Race Course, Inc., 492 So. 2d 1309, 
1311-1312 (Fla. 1986) (“A possessor of land is not liable to his invitees for 
physical harm caused to them by any activity or condition on the land whose 
danger is known or obvious to them, unless the possessor should anticipate the 
harm despite such knowledge or obviousness.” (quoting Restatement (Second) of Torts § 343A(1) 
(1965))); LaFever v. Kemlite Co., 706 N.E.2d 441, 447-448 (Ill. 1998) 
(same); Konicek v. Loomis Bros., Inc., 457 N.W.2d 614, 618 (Iowa 1990) 
(same); Bonn v. Sears, Roebuck & Co., 440 S.W.2d 526, 528-529 (Ky. 
1969) (landowner owes no duty to warn of “dangers that are known to the visitor 
or so obvious to him that he may be expected to discover them”); Isaacson v. 
Husson Coll., 297 A.2d 98, 105 (Me. 1972) (adopting Restatement (Second) of Torts § 343A(1) 
(1965)); Lloyd v. Bowles, 273 A.2d 193, 196 (Md. 1971) (“If the injured 
person knew or should have known of the dangerous condition, there is no right 
to recovery . . . the reason for the latter ruling being that the 
[landowner’s] liability is based on a presumption that he has greater knowledge 
concerning the dangerous condition than the invitee.”); O’Sullivan v. 
Shaw, 726 N.E.2d 951, 954-955 (Mass. 2000) (“Landowners are relieved of the 
duty to warn of open and obvious dangers on their premises because it is not 
reasonably foreseeable that a visitor exercising (as the law presumes) 
reasonable care for his own safety would suffer injury from such blatant 
hazards.”); Riddle v. McLouth Steel Prods. Corp., 485 N.W.2d 676, 680-681 
(Mich. 1992) (“[W]here the dangers are known to the invitee or are so obvious 
that the invitee might reasonably be expected to discover them, an invitor owes 
no duty to protect or warn the invitee unless he should anticipate the harm 
despite knowledge of it on behalf of the invitee.”); Richardson v. Corvallis 
Pub. Sch. Dist. No. 1, 950 P.2d 748, 755-756 (Mont. 1997) (landowner owes no 
duty to warn “persons foreseeably upon the premises for physical harm caused to 
them by any activity or condition on the premises whose danger is known or 
obvious to them, unless the possessor should anticipate the harm despite such 
knowledge or obviousness”); Tichenor v. Lohaus, 322 N.W.2d 629, 632-633 
(Neb. 1982) (adopting Restatement 
(Second) of Torts § 343A(1) (1965)); Tagle v. Jakob, 763 N.E.2d 
107, 109-110 (N.Y. 2001) (“We have long held that a landowner has no duty to 
warn of an open and obvious danger.”); Wrenn v. Hillcrest Convalescent Home, 
Inc., 154 S.E.2d 483, 484 (N.C. 1967) (per curiam) (“However, defendant was 
under no duty to warn plaintiff, as an invitee, of an obvious condition or of a 
condition of which the plaintiff had equal or superior knowledge.”); Johanson 
v. Nash Finch Co., 216 N.W.2d 271, 276-278 (N.D. 1974) (adopting Restatement (Second) of Torts 
§ 343A(1) (1965)); Armstrong v. Best Buy Co., 788 N.E.2d 1088, 1091 
(Ohio 2003) (“Where a danger is open and obvious, a landowner owes no duty of 
care to individuals lawfully on the premises.”); Nicholson v. Tacker, 512 
P.2d 156, 158 (Okla. 1973) (“It can be stated with equal force that the invitor 
has no duty to protect the invitee from dangers which are so apparent and 
readily observable that one would reasonably expect them to be discovered.”); 
Carrender v. Fitterer, 469 A.2d 120, 123-124 (Pa. 1983) (adopting Restatement (Second) of Torts 
§ 343A(1) (1965)); Coln v. City of Savannah, 966 S.W.2d 34, 41-44 
(Tenn. 1998) (same), overruled on other grounds by Cross v. City of 
Memphis, 20 S.W.3d 642 (Tenn. 2000); Hale v. Beckstead, 116 P.3d 263, 
265-270 (Utah 2005) (same); Tazewell Supply Co. v. Turner, 189 S.E.2d 
347, 349-350 (Va. 1972) (landowner owes no duty to warn “if the alleged 
dangerous condition was open and obvious to a person exercising reasonable care 
for his own safety”); Monk v. Virgin Islands Water & Power Auth., 53 
F.3d 1381, 1384-1388 (3d Cir. 1995) (applying Virgin Islands law) (concluding 
Restatement (Second) of Torts § 
343A(1) (1965) is consistent with Virgin Islands’ adoption of comparative 
fault); Tincani v. Inland Empire Zoological Soc’y, 875 P.2d 621, 630-631 
(Wash. 1994) (adopting Restatement 
(Second) of Torts § 343A(1) (1965)).
 
                
A few jurisdictions have held that the openness and obviousness of the condition 
is relevant to whether the landowner breached a duty to the invitee, but not to 
the threshold matter of whether the landowner owed a duty to warn of the 
condition. See Markowitz v. Ariz. Parks Bd., 706 P.2d 
364, 367-368 (Ariz. 1985) (abrogated in part by statute); Smith v. 
Baxter, 796 N.E.2d 242, 243-245 (Ind. 2003); Harris v. Niehaus, 857 
S.W.2d 222, 225-226 (Mo. 1993).
 
                
Some other jurisdictions have concluded that this rule is inconsistent with 
their comparative fault statutes, see Koutoufaris v. Dick, 604 
A.2d 390, 395-398 (Del. 1992); Harrison v. Taylor, 768 P.2d 1321, 
1323-1329 (Idaho 1989); Tharp v. Bunge Corp., 641 So. 2d 20, 23-25 (Miss. 
1994); Woolston v. Wells, 687 P.2d 44, 147-150 (Ore. 1984), or another 
state statute, see Vigil v. Franklin, 103 P.3d 322, 323, 328-332 (Colo. 
2004) (holding that Colo. Rev. Stat. 
Ann. § 13-21-115 preempted the “open and obvious danger” 
doctrine).
 
                
Lastly, some courts hold that whether a danger is open and obvious is merely one 
factor to be considered. See, e.g., Pitre v. La. 
Tech Univ., 673 So. 2d 585, 590-591 (La. 1996); 
Klopp v. Wackenhut Corp., 824 P.2d 293, 297-298 (N.M. 1992); Rockweit 
by Donohue v. Senecal, 541 N.W.2d 742, 748-749 (Wis. 
1995).

[11] Dixon v. 
Van Waters & Rogers, 682 S.W.2d 
533, 533-534 (Tex. 1984) (per curiam noting writ ref’d, n.r.e.) (citation omitted).

[12] 
Parker, 565 S.W.2d at 
521.

[13] See, 
e.g., Trammell Crow Cent. Texas, Ltd. v. Gutierrez, 267 S.W.3d 9, 17 (Tex. 2008) (“[W]e conclude that [the 
landowner] could not have reasonably foreseen or prevented the crime and thus 
owed no duty in this case.”); Gen. Elec. Co. v. Moritz, 257 S.W.3d 211, 
213 (Tex. 2008) (“We agree the jury alone can decide [negligence], but disagree 
that a jury can decide what legal duties landowners owe to independent 
contractors.”).

[14] Farley v. 
M M Cattle Co., 529 S.W.2d 751, 758 
(Tex. 1975) (rejecting voluntary assumption of the risk as an issue in 
negligence cases based on the legislative adoption of comparative negligence and 
the “cogent and compelling reasons” stated in Rosas v. Buddies Food 
Store, 518 S.W.2d 534, 538-539 (Tex. 1975) (“The heart of the matter is that 
the volenti doctrines represent an attempt to impose the analysis of 
subjective intent on a behavioral tort rather than resolve liability or not on 
the basis of fault under traditional concepts of negligence. Put more simply, 
negligence is a measure of a party’s conduct and the test is generally 
objective, whereas volenti is a subjective inquiry into a party’s actual, 
conscious knowledge. The standards are different.”) (Justice Steakley, joined on this point by two 
justices)).

[15] Ante at ___ 
n.34.

[16] Ante at 
___.

[17] Ante at 
___.