

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00087-CV

_____

JANINE PADRON, Appellant

V.

CATHOLIC DIOCESE OF AUSTIN A/K/A ROMAN CATHOLIC DIOCESE
OF AUSTIN; ITS AGENTS, SERVANTS, AND EMPLOYEES; AND
ST. IGNATIUS THE MARTYR MIDDLE SCHOOL, Appellees

On Appeal from the 250th District Court
Travis County, Texas
Trial Court No. D-1-GN-16-004298

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Janine Padron fell while descending an unlit stairway following a parent-teacher organization meeting at the St. Ignatius The Martyr Middle School (School).[1] Padron sued the School, the Catholic Diocese of Austin (Diocese), and "its Agents, Servants, and Employees" for (a) premises liability due to lack of adequate illumination on the stairway or warning of the dangerous condition, (b) negligence per se for allegedly failing to follow building codes adopted by the City of Austin, and (c) gross negligence. The Diocese and School filed traditional and no-evidence motions for summary judgment arguing, among other things, that Padron's premises-liability claim failed because she was aware of the darkened stairway, Padron was limited to asserting only a premises-liability claim, and there was no evidence that the Diocese or School committed gross negligence.

The trial court granted the summary judgment motions and rendered a take-nothing judgment in favor of the Diocese and School. Padron appeals. We affirm the trial court's judgment, because (1) the appellees had no duty regarding an open and obvious risk known to Padron and (2) summary judgment was proper on Padron's claim for negligence per se.[2]

Padron had attended a parent-teacher organization meeting at the School's family center on the evening of her injury. Padron, who had been to the family center many times, testified that a gym comprised the first floor of the center, that classrooms were located on the second floor, and

[1]Originally appealed to the Third Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. See TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Third Court of Appeals in deciding this case. See TEX. R. APP. P. 41.3.

[2]Padron does not raise any point of error complaining of the trial court's summary judgment on her gross negligence claim.

that there were four stairways leading to the second floor where classrooms were located. While it was still daylight, Padron, a homeroom teacher, and fifteen other parents walked up the stairway "on the church side entrance" (side stairway) to enter the homeroom teacher's classroom where the meeting was held. The acting principal also attended the meeting "as a parent."

After the meeting, Padron and the other parents used the same side stairway to exit the School. Padron did not mention whether the homeroom teacher left her classroom after the meeting, but testified that the principal remained in the classroom as the parents left. Padron said that the gym was lit and "there was lighting down on the floor." However, the side stairway was enclosed, the lights for the side stairway were off, it was nighttime, and the light from the gym floor would have only peeked in through a small window in the door leading to the gym. Thus, Padron testified that the side stairway was dark. Although there was a light switch on the second floor outside of the homeroom classroom near the side stairway, Padron testified that she did not look to see if there was a light switch for the stairway because she was "talking as [she] immediately came out of the classroom and just started proceeding down the . . . stairway."

Padron was the first parent to walk down the side stairway. She testified, "[A]s we got a little further down, it got darker and darker . . . . As I realized, you know, it was getting harder and harder to see, and that's when I grabbed the rail and we were walking down; then it got darker as we proceeded further down." Because she was "talking and proceeding," Padron testified that she did not consider turning around and going back up the stairs toward the light or asking anyone to turn on the lights to the side stairway. She also did not consider using another staircase to exit the

3

School because she believed they would be dark. Padron fell towards the bottom of the stairs, hitting her knees on the ground.[3]

Padron sued the Diocese and School for premises liability. She alleged that the School failed to make the side stairway safe, the darkened stairs caused her "to misstep . . . because she could not see the steps due to the lack of adequate illumination," and there was a lack of warning of the dangerous condition of the side stairway. She also raised a negligence per se claim, alleging that the Diocese and School violated Austin's 2012 International Building Code Ordinances requiring the means of egress to be illuminated by not less than "1 foot candle (11 lux) at the walking surface" at all times that a building is occupied, and a gross negligence claim based on both the "inadequately lighted steep stairway" and the absence of warnings that the building codes were being violated.

The Diocese filed a motion for summary judgment on the grounds that it did not own, possess, control, or have responsibility for the School's property. In the alternative, the Diocese also argued that (1) Padron's premises-liability claim failed because she specifically knew of the alleged unreasonably dangerous condition, (2) Padron's negligence per se claim failed as a matter of law because she was limited to asserting only a premises-liability claim, (3) the gross negligence claim failed since there was no liability for premises liability or negligence per se, (4) Padron had no evidence the Diocese knew or reasonably should have known of the alleged unreasonably dangerous condition, and (5) Padron had no evidence that the Diocese committed gross negligence.

---

[3]Padron testified that she was using the handrail as she descended due to the darkness, but, at some point, took her hand off the handrail because her "purse was falling, so [she] . . . kept switching [her] purse."

4

In a separately filed motion for summary judgment, the School mimicked the Diocese's alternative arguments.

In her summary judgment response, Padron admitted, "Plaintiff was aware of darkness and the dangers it presented." However, she argued that the building code violations were "some evidence of an unreasonable risk of harm and negligence per se," stated that she was not warned about the condition, and recited, without any support in the summary judgment evidence, that a School employee was able to observe the condition as she left. She also argued that she was required to use the side stairway out of necessity because the other stairwells were unlit. Padron did not adequately address the no-evidence motions for summary judgment on the gross negligence claim, but merely recited that the failure to warn Padron of the dark side stairway constituted gross negligence. The trial court granted both summary judgment motions and rendered take-nothing judgments against Padron.

The grant of a trial court's summary judgment is subject to de novo review by appellate courts. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In making the required review, we deem as true all evidence which is favorable to the nonmovant, we indulge every reasonable inference to be drawn from the evidence, and we resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When the trial court does not specify the basis for its ruling, we must affirm a summary judgment if any of the grounds on which judgment is sought are meritorious. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

"A party moving for traditional summary judgment has the burden to prove that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015); *see* TEX. R. CIV. P. 166a(c). A movant who conclusively negates at least one of the essential elements of a cause of action is entitled to summary judgment. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Once the movant establishes its right to summary judgment as a matter of law, "the burden shifts to the nonmovant to present evidence raising a fact issue" to defeat the motion for summary judgment. *Mott v. Kellar*, No. 03-14-00291-CV, 2015 WL 4718996, at \*1 (Tex. App.—Austin Aug. 5, 2015, no pet.) (mem. op.) (citing *Phan Son Van v. Pena*, 990 S.W.2d 751, 754 (Tex. 1999)).

A no-evidence summary judgment is essentially a pretrial directed verdict. Therefore, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). We must determine whether the plaintiff produced any evidence of probative force to raise a fact issue on the material questions presented. *See id.*; *Woodruff v. Wright*, 51 S.W.3d 727, 734 (Tex. App.—Texarkana 2001, pet. denied). The plaintiff will defeat a defendant's no-evidence summary judgment motion if plaintiff presented more than a scintilla of probative evidence on each element of its claim. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *Rhine v. Priority One Ins. Co.*, 411 S.W.3d 651, 657 (Tex. App.—Texarkana 2013, no pet.).

6

*(1)     Appellees Had No Duty Regarding an Open and Obvious Risk Known to Padron*

For a premises-liability defendant to be liable for a plaintiff's injury, that plaintiff must prove:

> (1) that [the defendant] had actual or constructive knowledge of some condition on the premises; (2) that the condition posed an unreasonable risk of harm to [the plaintiff]; (3) that [the defendant] did not exercise reasonable care to reduce or to eliminate the risk; and (4) that [the defendant's] failure to use such care proximately caused [the plaintiff's] personal injuries.

*United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471–72 (Tex. 2017) (alterations in original) (quoting *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983)). In premises-liability cases, the scope of a landowner's responsibility turns on the plaintiff's status. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010). It is undisputed that Padron was a business invitee. When an invitee becomes aware of an open and obvious risk, the risk is generally "no longer considered to be unreasonable." *Advance Tire & Wheels, LLC v. Enshikar*, 527 S.W.3d 476, 481 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Austin v. Kroger Tex.*, *L.P.*, 465 S.W.3d 193, 203 (Tex. 2015)).

"[G]enerally, a property owner owes invitees a duty to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition about which the property owner knew or should have known." *Id.*; *see Austin v. Kroger Tex.*, 465 S.W.3d 193, 202 (Tex. 2015) ("A landowner has a duty to exercise reasonable care to make the premises safe for invitees."). "A premises owner's duty toward its invitee does not, however, make the owner an insurer of the invitee's safety." *Austin*, 465 S.W.3d at 203; *Wal-Mart Stores, Inc. v. Gonzalez*, 968

S.W.2d 934, 936 (Tex. 1998); *see Lee v. K & N Mgmt., Inc.*, No. 03-15-00243-CV, 2015 WL

8594163, at \*2 (Tex. App.—Austin Dec. 11, 2015, no pet.) (mem. op.).

Applying the general rule, the Texas Supreme Court "has repeatedly described a

landowner's duty as a duty to make safe or warn against any concealed, unreasonably dangerous

conditions of which the landowner is, or reasonably should be, aware but the invitee is not."

*Austin*, 465 S.W.3d at 203.[4]  As explained in *Austin*,

> This general rule is consistent with the reasons for imposing a duty on landowners
> in the first place.  The landowner is typically in a better position than the invitee to
> be aware of hidden hazards on the premises, so the law mandates that the landowner
> take precautions to protect invitees against such hazards, to the extent the
> landowner is or should be aware of them. . . .
>
> When the condition is open and obvious or known to the invitee, however, the
> landowner is not in a better position to discover it.  When invitees are aware of
> dangerous premises conditions—whether because the danger is obvious or because
> the landowner provided an adequate warning—the condition will, in most cases, no
> longer pose an unreasonable risk because the law presumes that invitees will take
> reasonable measures to protect themselves against known risks, which may include
> a decision not to accept the invitation to enter onto the landowner's premises. *See*,
> *e.g.*, Restatement (Third) of Torts:  Liab. for Physical & Emotional Harm § 51 cmt.
> a (2012) (observing that reasonable care "only requires attending to the foreseeable
> risks in light of the then-extant environment, including foreseeable precautions by
> others"); Restatement (Second) of Torts § 343 cmt. b (1965) (observing that
> landowner must "give such warning that the [invitee] may decide intelligently
> whether or not to accept the invitation, or may protect himself against the danger if
> he does accept it").  This is why the Court has typically characterized the
> landowner's duty as a duty to make safe or warn of unreasonably dangerous
> conditions that are not open and obvious or otherwise known to the invitee.

*Id.* (alteration in original) (citations omitted).

---

[4]"Ordinarily, the landowner need not do both, and can satisfy its duty by providing an adequate warning even if the
unreasonably dangerous condition remains."  *Austin*, 465 S.W.3d at 203 (citing *State v. Williams*, 940 S.W.2d 583,
584 (Tex. 1996) (holding that landowner "had a duty to warn or make safe, but not both")).

Here, Padron's summary judgment response and the attached evidence demonstrated Padron's admission that she was aware of the dangers of the unlit stairway. Padron testified that she was aware of the risk of descending down darkened steps, but did not think to turn on the light or attempt another route of exit. When "the danger of falling because of the attempt to walk down . . . steps in the darkness [is] actually known and appreciated," the darkness constitutes an open and obvious danger. *Murphy v. City of Beaumont*, 420 S.W.2d 459, 461 (Tex. Civ. App.—Beaumont 1967, writ ref'd n.r.e.) (testimony that plaintiff was walking down stairs while "holding on to the side seats and leaning" showed her appreciation of danger); *see Birdsall v. Counts*, 450 S.W.2d 136, 141 (Tex. Civ. App.—Beaumont 1970, writ ref'd n.r.e.).

Because "there is no need to warn against obvious or known dangers," and the summary judgment evidence established that Padron was aware of the risk of falling on unlit stairs, the Diocese and School had no duty to warn Padron of the condition, unless an exception to the general rule applied. *Austin*, 465 S.W.3d at 204; *see Simpson v. Orange Cty. Bldg. Materials, Inc.*, No. 09-18-00240-CV, 2019 WL 470090, at *3 (Tex. App.—Beaumont Feb. 7, 2019, no pet.) (mem. op.) (quoting *Phillips v. Abraham*, 517 S.W.3d 355, 361 n.2 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("the open-and-obvious nature of the hazard or the invitee's knowledge of the hazard negates the landowner's negligence duty")).

Padron urges us to consider the necessary-use exception, which applies when the invitee must use the unreasonably dangerous area of the premises and the landowner should have anticipated that the invitee was unable to avoid the unreasonable risks associated with the condition despite the invitee's awareness of the risk. *Austin*, 465 S.W.3d at 206–07; *Wallace v. ArcelorMittal*

9

*Vinton, Inc.*, 536 S.W.3d 19, 24–25 (Tex. App.—El Paso 2016, pet. denied). Once the defendants demonstrate the applicability of the general rule as a matter of law, the burden shifts to the plaintiff to create a fact issue showing that the necessary-use exception applies. *Simpson*, 2019 WL 470090, at *5; *Harris v. Serenity Found. of Tex.*, No. 11-17-00068-CV, 2019 WL 470671, at *3 (Tex. App.—Eastland Feb. 7, 2019, no pet.) (mem. op.); *Zappa v. IKEA Holdings US, Inc.*, No. 14-17-00936-CV, 2018 WL 4702382, at *3 (Tex. App.—Houston [14th Dist.] Oct. 2, 2018, no pet.) (mem. op.).

The necessary-use exception arose from *Parker v. Highland Park, Inc.*, after the plaintiff slipped and fell on darkened stairs in an apartment complex. *Austin*, 465 S.W.3d at 206 (citing *Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 514 (Tex. 1978)). There, the plaintiff was aware of the darkness and the dangers presented and "took measures to mitigate the risks by having her sister hold a flashlight to illuminate the stairs and by taking careful steps while holding on to the handrail." *Id.* (citing *Parker*, 565 S.W.2d at 514). In *Parker*, it was undisputed that the lights in the fixtures that would have illuminated the stairs were exclusively controlled by the apartment complex and "were out when the accident occurred." *Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 514 (Tex. 1978). The apartment complex admitted that the lights were controlled by a mechanism recessed in the wall and were likely off due to an employee's failure to properly set the automatic timer. *Id.* Thus, the necessary-use exception was created to apply on a showing "that (1) it was necessary that the invitee use the unreasonably dangerous premises and (2) the landowner should have anticipated that the invitee was unable to avoid the unreasonable risks despite the invitee's awareness of them." *Austin*, 465 S.W.3d at 207. The exception does not

10

apply when plaintiffs "are aware of the risks and could have avoided them." *Id.* at 208; *see Simpson*, 2019 WL 470090, at \*5 ("when the summary judgment evidence establishes that the plaintiff could have avoided the condition, then the necessary-use exception does not apply, and summary judgment is appropriate").

Invitees presumably will take measures to protect themselves against risks of which they are aware. *See Austin*, 465 S.W.3d at 203. Unlike in *Parker*, Padron did not take adequate steps to mitigate the risks of the dark side stairway even though she could have illuminated it. The necessary-use exception does not apply here since the summary judgment evidence demonstrated that Padron was aware of the risks posed by the dark side stairway and could have avoided them by turning on the light, requesting that someone turn on the light, or walking back up to the classroom to seek assistance from the principal to illuminate the side stairway. In other words, it was not necessary that Padron use the darkened side stairway in its dangerous condition.

We conclude that the Diocese and School conclusively negated a duty to make safe or warn Padron of the open and notorious danger she could have avoided. Therefore, the trial court's summary judgment was proper on Padron's premises-liability claim. We overrule this point of error.

*(2)     Summary Judgment Was Proper on Padron's Claim for Negligence Per Se*

In 2017, the Texas Supreme Court wrote,

> [A] person injured on another's property may have *either* a negligence claim or a premises-liability claim against the property owner. When the injury is the result of a contemporaneous, negligent activity on the property, ordinary negligence principles apply. When the injury is the result of the property's condition rather than an activity, premises-liability principles apply.

11

*United Scaffolding, Inc.*, 537 S.W.3d at 471 (emphasis added). Because premises-liability and negligence claims are based on independent theories of recovery, "they are not interchangeable." *Id*. "Underpinning the distinctions between these claims is the principle that 'negligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe.'" *Id*. (quoting *Del Lago*, 307 S.W.3d at 776).

Even if a plaintiff "attempt[s] to characterize h[er] claim as something other than premises liability, '[c]reative pleading does not change the nature of a claim.'" *Id.* at 480 (quoting *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 386 (Tex. 2016) (citations omitted)). "[I]f a claim is properly determined to be one for premises defect, a plaintiff cannot circumvent the true nature of the claim by pleading it as general negligence." *Id*. (citing *Sampson*, 500 S.W.3d at 389). "Such creative pleading would allow plaintiffs to 'plead around the heightened standard for premises defects, which requires proof of additional elements . . . .'" *Id*. (quoting *Sampson*, 500 S.W.3d at 385). "Likewise, one cannot transform the true nature of a claim by submitting it . . . under a different theory of recovery." *Id*. (citing *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 529 (Tex. 1997)).

Pleading negligence per se, Padron states, "The failure to provide adequate illumination was not only negligent, but in direct violation of building code ordinances." Yet, Padron did not

plead that any contemporaneous activity caused her injury.[5] *See id*. at 472; *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992) (although defendant sprayed floor, causing wet and dangerous condition on the floor, plaintiff's claim was for premises defect—not negligence—since "she was not injured by the activity of spraying"). Instead, the essence of her claims is that her injury resulted from the dark condition of the side stairway. "[S]lip/trip-and-fall cases have consistently been treated as premises defect causes of action." *Id.* (citing *Sampson*, 500 S.W.3d at 391). "In such cases, the plaintiff alleges injury as a result of a physical condition or defect left on the premises, 'not as a contemporaneous result of someone's negligence.'" *Id*. We conclude that Padron's claim was for a premises defect. *See id.*

Padron could not creatively transform her premises defect claim into a negligence per se claim. Negligence per se is not an independent cause of action. *Weirich v. IESI Corp.*, No. 03-14-00819-CV, 2016 WL 4628066, at *2 (Tex. App.—Austin Aug. 31, 2016) (mem. op.) (citing *Thomas v. Uzoka*, 290 S.W.3d 437, 445 (Tex. App.—Houston [14th Dist.] 2009, pet. denied)). "Rather, negligence per se is merely one method of proving a breach of duty, a requisite element of any negligence cause of action." *Id.* (citing *Thomas*, 290 S.W.3d at 445); *see Aranda v. Willie Ltd. P'ship*, No. 03-15-00670-CV, 2016 WL 3136884, at *3 (Tex. App.—Austin June 1, 2016, no pet.) (mem. op.). Allowing Padron's negligence-per-se claim in this case would essentially impose a lesser standard of duty on the Diocese and School where none existed on the premises-defect claim. *See Brinker v. Evans*, 370 S.W.3d 416, 420 (Tex. App.—Amarillo 2012, pet. denied)

---

[5]Moreover, the summary-judgment evidence established that the acting principal remained in the classroom after the event, and there was no evidence suggesting that the homeroom teacher had left her classroom.

13

(finding that the trial court was not required to submit a negligence-per-se claim where the plaintiff's injury resulted from a premises defect). This would run afoul of the Texas Supreme Court's ruling in *United Scaffolding, Inc.*

The trial court properly granted summary judgment in favor of the Diocese and School on Padron's negligence-per-se claims. We overrule this point of error.[6]

We affirm the trial court's judgment.

                                        Josh R. Morriss, III
                                        Chief Justice

Date Submitted:     March 13, 2019
Date Decided:       April 10, 2019

---

[6]Because our rulings are dispositive of this appeal, we need not address Padron's argument that there was a fact issue as to whether the Diocese owned, occupied, or was responsible for the School premises.